# Township of West Mahanoy *versus* Watson.

1. The question of proximate cause where the facts are disputed is for the jury; where they are undisputed the court may determine it.

2. In determining what is proximate cause, the rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act.

3. A team of horses were killed by a moving locomotive on a railroad track about a mile from the highway and about five miles from where they took fright by the sleigh to which they were hitched being overturned by an ash-heap in the highway. In an action by the owner of the horses against the township to recover the value of the horses.

*Held*, that the negligence of the township, if any, was not the proximate but the remote cause of the killing of the horses, and therefore there could be no recovery.

April 21st, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Schuylkill county:* Of January Term, 1886, No. 137.

This was an action on the case by M. C. Watson against the Township of West Mahanoy to recover damages for the killing of a team of horses and injury to a sleigh and harness belong-

ing to him through the alleged negligence of the defendant in allowing a heap of ashes to be deposited in the highway, which overturned the sleigh to which the horses were hitched, caused them to run away, and in their fright to get upon a railroad track, where they were killed by a moving locomotive.

Plea, not guilty.

The following are the facts as they appeared on the trial before BECHTEL, J.:

On January 16th, 1884, two horses and a sleigh, owned by M. C. Watson, plaintiff below and defendant here, in charge of his drivers, were being driven along a public road in West Mahanoy Township, defendant below and plaintiff here. The sleigh was upset and the drivers thrown out, the bar of the sleigh separated from the "body," or runners. The horses dragged the driver a short distance, when he let go the reins. They ran several miles along the Township road, and then, from some cause unexplained, abandoned the wagon road and got on the Lehigh Valley Railroad. Whilst on the railroad track, five or six miles from the scene of the accident, and a mile from any public road, a locomotive and train of cars belonging to and operated by the railroad company ran upon the horses and killed both of them.

In his declaration the negligence ascribed by the plaintiff to the township, in the first count, consisted in allowing ash-heaps to be deposited in the road; and in the second in not opening the road of proper width; both counts claimed damages for the injury to the sleigh and harness and for the killing and loss of the horses.

The undisputed testimony showed that the damage to the sleigh and harness was about $20, and the value of the horses was $500.

The defendant presented, *inter alia*, the following point:

5. It being an admitted fact in this case that the horses were killed, not on the Township road, but on the Lehigh Valley Railroad, by a moving locomotive (not owned or controlled by the township) which ran upon and killed them, the negligence of the township, if any, was not the proximate, but the remote cause of the killing of the horses, and the plaintiff cannot recover their value in this action.

The court answered it by saying: We submit to you the question whether the negligence of the defendant was the proximate cause of the killing of the plaintiff's horses, or whether it was the remote cause. If it was the proximate cause the defendant must answer for the injury; if it was the remote cause, the defendant is not liable for such killing.

Verdict for the plaintiff in the sum of $520, and judgment

thereon, whereupon the defendant took this writ, assigning for error the answer of the court to the fifth point, as above shown.

*Samuel H. Kaercher* and *Mason Weidman (James F. Minogue* with them), for plaintiff in error.—The court in refusing to affirm this point adopted a theory that the question whether an injury is the proximate result of negligence, or to put it the other way, whether the negligence is the proximate cause of the injury complained of, is always a question for the jury whether the facts are undisputed or not. For this view R. R. Co. *v.* Hope, 30 P. F. S., 373 ; and Hey *v.* City of Philadelphia, 31 Id., 44, were relied on at the time of the trial ; and Raydure *v.* Knight, 2 W. N. C., 713 ; City *v.* Greer, 10 H., 65 ; Scott *v.* Hunter, 10 Wr., 192, were afterwards cited in the opinion filed refusing a new trial.

We relied then, and rely now, upon the case of Hoag and Alger *v.* R. R. Co., 4 Norris, 293, where we have a more recent utterance of this court on this very question, fairly raised and squarely answered.

We contend that the court should not only have decided whether the negligence of the township was, or was not, the proximate cause of the killing of the horses ; we contend further, that under the undisputed facts of this case it was the duty of the court to have told the jury that in this case the negligence of the township was not the proximate but the remote cause, and that the plaintiff could not recover their value in this action.

*Causa proxima non remota spectatur* is the maxim of the common law which rules this case, and it simply means that the defendant shall be held liable for the natural consequences flowing from his act of negligence—such as could be reasonably expected to follow, the proximate and not the remote results. The question in such case is, " did the cause alleged produce its effects without another cause intervening ? "

The questions raised here were thoroughly discussed in the following recent cases, viz.: Kerr *v.* R. R. Co., 62 Pa. St., 353 ; Hoag *v.* S. & M. R. R., 85 Id., 293 ; Pittsburgh *v.* Grier, 10 H., 65.

*James B. Reilly (M. M. L'Velle* with him), for defendant in error.—As to the correctness of the ruling of the court below in leaving it to the jury to determine whether such negligence was the proximate or remote cause, we submit that it is so clearly established by the decisions of this court that we may content ourselves with a simple reference to them, viz.: Penna. Railroad Co. *v.* Hope, 30 P. F. S., 373 ; Hey *v.* Philadelphia, 31 Id., 44 ; Raydure *v.* Knight, 2 W. N. C., 713 ;

Scott *v.* Hunker, 10 Wr., 192; Penna. & New York C. & Rd. Co. *v.* Lacey, 8 Norris, 458.

Mr. Justice PAXSON delivered the opinion of the court, May 10th, 1886.

This was an action brought by the plaintiff below against the Township of West Mahanoy to recover damages for the loss of his horses and injury to his sleigh, caused as the jury have found, by the negligence of the township in not keeping the public highway in a safe condition for travel. The undisputed facts are, that on January 16th, 1884, two horses and a sleigh owned by the plaintiff, in charge of his men, were being driven along a public road in said township, when, by reason of a pile of ashes which had been deposited in the highway, the sleigh was overturned and injured; the horses ran off, and were found next day upon the track of the Lehigh Valley Railroad, from five to six miles distant from where the accident occurred, and about a mile from any public highway. Both horses were dead when found, having evidently come in contact with a moving locomotive, and were thus killed.

The negligence of the township, having been found by the jury, was conceded upon the argument at bar. Hence no question was made as to the damages resulting from the injury to the sleigh and harness; but as to the horses it was contended that the negligence of the township was not the proximate, but the remote cause of their being killed, and that for this reason the plaintiff could not recover. This question was distinctly raised by the defendant's fifth point, which was as follows: "It being an admitted fact in this case that the horses were killed, not on the Township road, but on the Lehigh Valley Railroad, by a moving locomotive (not owned or controlled by the township) which ran upon and killed them, the negligence of the township, if any, was not the proximate, but the remote cause of the killing of the horses, and the plaintiff cannot recover their value in this action."

The court answered it as follows: "We submit to you the question whether the negligence of the defendant was the proximate cause of the killing of the plaintiff's horses, or whether it was the remote cause. If it was the proximate cause the defendant must answer for the injury; if it was the remote cause the defendant is not liable for such killing."

No objection was made below or here to this point upon the ground that it assumes the facts. We understand the facts to be conceded.

While it is undoubtedly true as a general proposition that the question of proximate cause is for the jury, yet it has

been repeatedly held that where there are no disputed facts the court may determine it. It is sufficient to refer to Hoag *v.* The Railroad Company, 35 Pa. St. Rep.. 293. In that case this court, following Railroad Co. *v.* Kerr, 62 Pa. St. Rep., 353, and Railroad Co. *v.* Hope, 30 Id., 373, laid down the rule as to proximate cause as follows: "In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong-doer as likely to flow from his act."

Tested by this rule the negligence and the injury certainly appear a long distance apart. Assuming that the running away of the horses was the natural and probable consequence of the overturning of the sleigh, we have to further assume that their continuing their flight for several miles, and finally getting upon a railroad track and being there killed, was also a natural and probable consequence of such overturn. If the township is responsible for all possible consequences of its negligence, then we would have no doubt upon this point. Such, however, is not the rule.

Assuming, however, that the township would be liable in case the horses were killed in the course of their first fright; that is to say, that becoming frightened by the overturning of the sleigh, they ran on until they reached the railroad track, turned up said track, dashed against a passing locomotive, and were thus killed before they had recovered from their original terror, the plaintiff's difficulty is that he has not proved these facts, if they exist. We are asked to assume them, thus piling presumption upon presumption.

The case is entirely barren of evidence as to what became of the horses after they commenced to run until they were found dead upon the track of the railroad. The accident occurred in the evening; the horses were not found until the next morning, and then at a point, as before stated, from five to six miles from the place from where they started. There is no proof that it was a continuous flight, and that they had not recovered from their terror when killed. We are asked to assume these facts. It is certainly not a presumption of law, and as a presumption of fact it is too violent to base a verdict upon. A horse when badly frightened runs at the top of his speed and soon exhausts himself, and with such exhaustion his terror naturally diminishes. It is possible, but not probable, not sufficiently so at least for us to assume it, that a horse would continue to run over five miles without practically recovering from his fright. No one will contend that if these horses had so recovered, had wandered upon the railroad track

as any other stray horses would do, and were then killed by a passing locomotive, that the township would be liable. The negligence in such case would not have been the proximate cause.

In any view of this case, admitting the facts we are asked to assume to have been proved, the strain is sufficiently severe to connect the killing of the horses with the act of negligence. We will not add to the strain by assuming facts which have not been proved, and which are in themselves doubtful, if not improbable.

The defendant's fifth point should have been affirmed without qualification.

> The judgment is reversed and a *venire facias de novo* awarded.