JAMES E. SPARKMAN *v.* THOMAS J. GRAHAM.

1. FERRIES.  *Negligence.  Liability of keeper.*

    The keeper of a free public ferry who so operates the same by him-
self or his employee that a frayed rope's end several feet in length,
left hanging from a knot where the rope used in drawing the ferry-
boat had been mended, is allowed to strike and frighten horses on
the boat as the same passes under the rope in crossing the stream,
becomes liable in damages for such negligence to the owner of
horses which jump overboard and are drowned in consequence of
being so struck and frightened.

2. SAME.  *Statutory requirements.  Code* 1892, § 3947.

    The keeper of a free public ferry under contract with the board of
supervisors is liable, under code 1892, § 3947, for all damages sus-
tained in consequence of his conveying or attempting to carry any
person over the ferry in a boat not good and sufficient and fur-
nished and manned according to law.

FROM the circuit court of Noxubee county.

HON. GUION Q. HALL, Judge.

Graham, the appellee, was the plaintiff in the court below;
Sparkman, the appellant, was defendant there.  From a judg-
ment in plaintiff's favor, defendant appealed to the supreme
court.  The opinion states the case.

*Rives & Brooks,* for appellant.

The court erred in overruling defendant's motion to rule out
the evidence of plaintiff.  Sparkman did not own the property;
he was merely the agent of the county, employed to keep the
ferry, with such appliances as the board of supervisors would
furnish him.  Neither he nor his ferryman were guilty of any
gross neglect.  They had made the best use of the materials
furnished them, and exercised all the care and the prudence
possible.  Being a public servant, he is not liable for any dam-
ages.  "Administerial officer acting within his authority and

with due care is not liable to any person who may be injured by his acts." 19 Am. & Eng. Enc. L. (1st ed.), 490. "But if the duty is of such a nature as to require money to enable the officer to perform it, he cannot be held liable, unless it can be shown that he possessed sufficient funds or was in default for not. possessing them.

The court erroneously refused the instructions for defendant, basing his defense upon the contributory negligence of plaintiff's wife and her gentleman escort. Their own evidence shows that the horse had never before crossed the ferry, yet they allowed him to remain on the ferry without unhitching him or without even holding him. Under such circumstances we were entitled at least to have the question of contributory negligence submitted to the jury, which the court refused to permit us to do.

*Brame & Richardson*, for appellee.

The code of 1892, § 3942, authorizes the establishment of free ferries. J. E. Sparkman was appointed ferryman in February, 1897, for one year, and this accident occurred in April, 1899. It is claimed that neither J. E. Sparkman nor his bondsmen are liable, because his term had expired. While the account is made out against J. E. Sparkman and his sureties, the judgment is rendered only against J. E. Sparkman, the man who was in charge of the ferry. at the time, having the negro, Tony Barnes, employed to manage it as his ferryman. It makes no difference, therefore, how the case is viewed, J. E. Sparkman is liable. If he was ferryman by virtue of his appointment in February, 1897, or if he was ferryman *de facto*, by virtue of his assuming to perform the duties for the public, he is liable for the carelessness or mismanagement of the ferry; but Sparkman's testimony shows that he regarded himself as being in the employ of the county.

But it is said that he is not liable, because this was a free ferry, and no responsibility rested on him to perform its duties. Section 3947, code 1892, sets out in full the requirements of

the owner or keeper of every ferry, among which we find that the ferry shall be furnished with all necessary machinery and other appliances, and if any keeper of a ferry shall carry or attempt to carry any person over any ferry in a boat not good and sufficient and furnished and manned according to law, he is liable to a certain penalty, besides being liable to the parties injured for any damages sustained.

Now, this clause applies to any keeper of a ferry. Sparkman was the keeper of this ferry, being paid by the board of supervisors $14 per month to attend to the same, and was paid $14 for the very month in which the accident occurred. Can it be said that because this was a ferry free to the public that its servant is not responsible for the improper management of the ferry? He assumed its duties, was paid for his services, and certainly he assumed the accompanying responsibilities. But it is said that the ferryboat and equipments were furnished by the county, and if the rope was defective, it was the county's fault, and not Sparkman's. The complaint of plaintiff is not that the rope was tied, but that after the rope was tied the ferryman carelessly allowed the ends to frazzle and hang down, and when this great bunch of wet, dripping, frazzled grass came up out of the water, its unseemly appearance frightened one of the horses, and it hung down so low it was impossible to keep it from striking the horse hard, as it did, causing him to try to get out of its way, in doing which he shoved the other horse off of the flat, going with it. It is not contended that the rope struck the horse or frightened him, for the proof shows that he and his mate were perfectly quiet, and remained so up to the time this frazzled part of the rope was raised up out of the water and struck him; and appellee's contention is that the horse would not have behaved as he did had it not been for this frazzled part of the rope. This caused the trouble, and not the rope itself.

In this state the court has held that the keeper of a public ferry is a common carrier, and is liable as an insurer of the

property committed to his charge for transportation, against all loss or damage except such as may result from the act of God or the public enemy, or from the act of the owner or his agent or servant. See *Powers* v. *Mills*, 8 Ga., 591. But the learned judge in the court below refused all instructions on this line for plaintiff, and held that he was only bound to ordinary care and prudence.

TERRAL, J., delivered the opinion of the court.

The board of supervisors of Noxubee county established a free ferry across Noxubee river, at a point known as "Giles' Ferry," near Cooksville. The keeping of said free ferry was let by the board, at a stated price per month, to J. E. Sparkman, who employed one Tony Barnes as ferryman. Mrs. Graham, with her nephew, Hunnicutt, and three children, traveling in the surrey of the plaintiff below, and drawn by two horses belonging, also, to him, applied to be ferried across said river, and, in the endeavor, the two horses were drowned and some slight injury inflicted upon the surrey and harness, for which injuries this suit is brought. The rope by which the flat was drawn across the stream had parted at a point between the banks, and had been tied together, and from the knot there depended about four feet of the rope, which dangled in the water and had become frayed. In crossing the river, it was necessary for the boat to pass under the rope, and, when the boat came to the point on the stream where it was necessary to raise the rope to permit the boat to pass under it, it so happened that this frayed piece of rope, depending some four feet from the knot where tied together, came near the heads of the horses, and the use of the rope in moving the flat caused the frayed piece to strike the horses on their heads, which so frightened them that they jumped out of the flat into the river and were drowned. Appellee recovered a verdict and judgment, and Sparkman appeals.

Code 1892, § 3947, expressly provides that the owner or keeper of every ferry shall be subject to a penalty of $10 for the omission of any duty therein prescribed, "besides being liable to the parties for any damages sustained." It is perfectly clear, from the record, that the injury occurred from fright to the horses from being hit on the head by this frayed and wetted rope, which was negligently left dangling by the ferryman. Mrs. Graham testified that it was this frayed piece of rope striking the horses on the head that caused them to jump out of the flat. Hunnicutt, her nephew, testified to the same as being the cause of the injury, while Tony Barnes himself testified that, as the rope was lifted for the boat and surrey to pass under it, the rope came close to the horse's head, when he jumped back, made a lunge, and threw the other horse off. There was some conflict in the testimony of plaintiff and defendant as to whether the one side or the other was responsible for leaving the horses hitched to the surrey; but that was unimportant, as it is perfectly manifest that their loss would have happened if they had been unhitched.

The instructions of the court ruled the defendent to be responsible only for ordinary negligence, and in this respect it was probably too favorable to his side of the question, but of that he cannot complain.

*Affirmed.*