MARY E. CONDRAN, as Administratrix of the Estate of JAMES CONDRAN, Deceased, Respondent, *v.* PARK & TILFORD, Appellant.

*Master and servant — negligence — death of servant caused by fall of freight elevator — defective condition of elevator — master's knowledge of such condition and liability for result thereof questions for the jury.*

1. On examination of the facts and of the course of the trial in an action to recover for death by fall of an elevator, *held,* that it is

not necessary to a recovery by plaintiff that defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye. Whether the accident in question ought to have been foreseen; whether, if seen, any defect portended danger, and whether, if danger resulted, the fall of the elevator was a proximate consequence, were questions for the jury.

2. A jury should not be permitted to infer negligence from conditions not proved to have been the cause of the disaster; hence defects not established by the proof should not have been left to its consideration.

*Condran* v. *Park & Tilford*, 159 App. Div. 900, reversed.

(Argued December 2, 1914; decided January 5, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 12, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Verner Johnson* and *Amos H. Stephens* for appellant. It was no part of the duties of the deceased to repair this elevator, and having volunteered to assist his brother Michael and to perform work involving unusual risks and dangers, of which he was or should have been aware, but of which his employer had no notice, his representatives may not now be heard to complain if injury resulted therefrom. (*McCue* v. *Nat. Starch Mfg. Co.*, 142 N. Y. 106; *Sann* v. *H. W. Johns Mfg. Co.*, 16 App. Div. 252; *Kindorf* v. *Hoellerer*, 87 App. Div. 628; *Sheehan* v. *Standard Gas Light Co.*, 87 App. Div. 174; *Jackson* v. *Greene*, 201 N. Y. 76; *Wittgren* v. *Wells Bros. Co.*, 141 App. Div. 693; *Crowley* v. *M. & H. Co.*, 154 App. Div. 478; *Thompson* v. *Cary Mfg. Co.*, 62 App. Div. 279.) The allegations in the complaint and in the notice of claim under the Employers' Liability Act to the effect that the injuries complained of were occasioned by defects in the elevator, which were

not discovered or remedied owing to the negligence of the defendant, and which defects are specified in the plaintiff's bill of particulars, are wholly unsupported by any proof. (*Dougherty* v. *Milliken*, 163 N. Y. 527; *Schlappendorf* v. *Am. R. T. Co.*, 142 App. Div. 554; *Fink* v. *Slade*, 66 App. Div. 105; *Welsh* v. *Cornell*, 168 N. Y. 508; *Young* v. *Mason Stable Co.*, 193 N. Y. 188; *Stackpole* v. *Wray*, 99 App. Div. 262; *Hart* v. *Naumburg*, 123 N. Y. 641; *Bucher* v. *Pryibil*, 19 App. Div. 126; *Biddiscomb* v. *Cameron*, 35 App. Div. 561; affd., 161 N. Y. 637; *Montgomery* v. *Bloomingdale*, 34 App. Div. 375.) Even if the proof offered on behalf of the plaintiff had established a *prima facie* case against the defendant within the allegations of the complaint, the jury were improperly and incorrectly instructed with respect thereto, and exceptions taken by the defendant to the instructions given and to refusal to instruct as requested present reversible error. (*Stourbridge* v. *Brooklyn City R. R. Co.*, 9 App. Div. 129; *O'Connell* v. *Clark*, 22 App. Div. 466; *Citrone* v. *O'Rourke Eng. Const. Co.*, 188 N. Y. 339; *Rnssell* v. *Lehigh Valley R. R. Co.*, 188 N. Y. 344; *McGuire* v. *Bell Tel. Co.*, 167 N. Y. 208.)

*Cyrus V. Washburn, John E. Ruston* and *Robert H. Koehler* for respondent. The evidence fully supports the verdict. (*Ferrick* v. *Eidlitz*, 195 N. Y. 248; *Robinson* v. *Consolidated Gas Co.*, 194 N. Y. 37; *Peck* v. *N. Y. Central R. R. Co.*, 165 N. Y. 347; *Schlappendorf* v. *American Ry. T. R. Co.*, 156 App. Div. 369; *Griffen* v. *Manice*, 166 N. Y. 188; *Breen* v. *N. Y. C & H. R. R. R. Co.*, 109 N. Y. 297; *Holmstrom* v. *Ward*, 154 App. Div. 642; *Marceau* v. *Rutland R. R. Co.*, 211 N. Y. 203; *Buckley* v. *Beinhauer*, 136 App. Div. 540; 201 N. Y. 572; *Schaefer* v. *Mayor, etc., of New York*, 154 N. Y. 466; *McHugh* v. *M. R. Co.*, 179 N. Y. 378.) Plaintiff's intestate was not a volunteer. (*Greef* v. *B. L. & R. R. Co.*, 205 N. Y. 239.)

CARDOZO, J.   The plaintiff's intestate, James Condran, for many years an employee of the defendant, Park & Tilford, met his death in the defendant's store through the fall of a freight elevator.   His brother, Michael, died at the same time.   The defendant's liability for the death of James is the subject of this action.

The elevator ran upon wooden guide rails at the sides of the hoistway.   The cables which raised it were wound about a revolving drum.   On November 18, 1910, the porters were hoisting casks of wine from the basement to the fourth or top floor.   The elevator ran a few inches above the floor.   The man in charge tried to lower it, but it would not move.   Michael Condran, the head porter, and James Condran, the receiving and shipping clerk, came to the operator's aid.   Inspection showed that the cables were disarranged.   They had slipped out of the groove on the drum, and had thereby become entangled. After some attempt to adjust them and dislodge the car, the men gave up the task.   They decided to leave it where it stood until they could send elsewhere to have it repaired.   They climbed down from the top of the car on which they had been working.   James Condran took his stand on some chests of tea that were piled up on the floor beside him.   Michael swung himself on the platform of the car and landed there heavily.   As he did so, the car shot down the shaft.   It carried Michael with it.   At that moment James was leaning forward to enter the car, and he, too, fell to his death.

· We think the jury could properly find that in helping to make these repairs, James Condran was not a volunteer, but was doing his duty.   It is true he was known as the receiving and shipping clerk, but the evidence is that he was employed generally as a useful man about the place.   He had done like work in the past with the approval of the defendant's superintendent.   We think also that there was evidence from which the jury might find that the defendant had been negligent.   "It was

not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." (*Munsey* v. *Webb*, 231 U. S. 150, 156.) Whenever the car ran a little above the level of the top floor, the cables were forced out of their grooves and became tangled and twisted. That is what happened on this day. The same thing had happened before. It had to happen whenever the operator did not make a perfect landing. The defendant thus knew, or at all events might have known, of the dangerous condition. We speak of it as dangerous, for we think it could be found so by a jury. The twisting of the cables held the car tight, but the appearance of safety was deceptive, for of a sudden they snapped and the car fell. The inference is not unreasonable that in being thus twisted and entangled they were subjected to a strain which they could not bear. One of them was found the next day entirely off the drum and wound around the shaft. A witness describes it as "jammed in so tight" between the shaft and the drum that it could not be pried out, but had to be cut with a chisel. The break in one cable was about ten feet from the crossbar above the car; in the other about forty feet. Owing to the manner in which they were entangled, it was to be expected that they would break at different distances. Indeed, it is not improbable, as the defendant concedes, that with one cable off the drum, a single cable had to stand the weight and strain of the car. In the absence of some other and more reasonable explanation, the jury, we think, had the right to find that the twisting and overlapping of these cables was the cause of the disaster. It does not acquit the defendant of fault to show that there was no trouble when the car was even with the floor. The chance that it would often run a few inches higher was not to be ignored. It had run higher before. It might reasonably be expected to run the same way again. Common experience

instructs us that this was something to be foreseen.
Whether it ought to have been foreseen, whether, if
seen, it portended danger, and whether, if danger
resulted, the fall of the elevator was a proximate conse-
quence, were questions for the jury. (*Munsey* v. *Webb,
supra.*)

There was no error, therefore, in the refusal to dismiss
the complaint. There was error, however, as we think,
in the way in which the case was submitted to the jury.
The learned trial judge made no attempt in his charge to
state the physical conditions from which the jury would
have the right to draw the inference of negligence. He
left it to them in the most general terms to say whether
the elevator was in order, and whether a reasonably safe
place in which to work had been provided for the defend-
ant's servants. With a charge so general, it became
important that the jury should not be permitted to infer
negligence from conditions not proved to have been the
cause of the disaster. The defendant's counsel attempted
to eliminate those conditions by appropriate requests to
charge. The plaintiff in her bill of particulars had speci-
fied many defects other than the twisted cables. She had
charged that a bolt or key which fitted in the drum was
loose, and had repeatedly fallen out. The defendant
asked the court to charge that there was no evidence to
warrant a finding that the fall of the elevator was due
to any such defect. The request was refused, and the
refusal, we think, was error. It is true that months
before a key had fallen out of the drum. But workmen
made the necessary repairs, and that was the end of the
trouble. This is admitted by the plaintiff's witnesses.
The key, so far as the evidence shows, was intact and in
place when the machinery was examined after the ele-
vator fell. There was no proof of any present defect in
the condition of the drum. There was no proof of any
causal connection between the previous defect and the
fall of the hoist. The jury could not say consistent'

with the evidence that the one event had anything to do with the happening of the other.

There was a like error in the refusal of other requests to charge. The record contains no evidence that the fall of the elevator was due to any defects in the guide rails. A screw had fallen from one of the rails between the first and second floors. Its loss, however, had nothing to do with the accident. The defendant asked the court to instruct the jury accordingly, but the request was refused. All that the plaintiff's counsel is able to say in support of that ruling is that if a screw fell out at one point, a jury might assume, even without evidence, that other screws fell out elsewhere. Many other defects relied on by the plaintiff, and not established by the proofs, were left to the consideration of the jury against the defendant's protest. There was no proof that the fall of the car was due to the play between the shoes of the car and the guide rails. The uncontradicted evidence is that the play was not unusual. There was no proof that the fall was due to any defects in the clutches. True, the clutches were clotted with dirt and oil, but it does not appear that this made them ineffective. The result of these rulings was that the jury had no adequate guidance as to the issues to be decided. They were told to say whether the defendant had been negligent. The act or omission was not defined to which negligence might be attributed.

The defendant urges that there was a like error in permitting the jury to find that the cables were defective. A witness described them as worn, but explained by this that he meant that they were glassy or shiny. He also said that after the car fell he observed that the strands of the cable had separated at the point of breakage. This supplies no proof that any defect was visible before the fall. There is, however, a sentence in the testimony of this witness in which, describing a cable as he observed it before the car fell, he speaks of it as raveled. The con-

text makes it very doubtful whether he meant anything more than that the coils of the cable had escaped from the groove, and had become twisted around the drum. We are not required on this appeal to determine the meaning that should be given to this testimony. We call attention to it now in order that on another hearing its obscurity may be corrected.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Judgment reversed, etc.