# Richmond

## Chesapeake Ferry Company v. William F. Cummings, Administrator, Etc.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Hughes, Little & Seawell,* for the plaintiff in error.

*Baird, White & Lanning,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action, instituted by a notice of motion, is to recover damages from the Chesapeake Ferry Company for an injury causing the death of James C. Cummings. There was a verdict and judgment of $7,500.00 in behalf of the plaintiff, from which the defendant obtained a writ of error.

The defendant, the Chesapeake Ferry Company, owns and operates a ferry for the transportation of passengers and vehicles across Hampton Roads between Newport News and Pine Beach. The *Chesapeake* is one of the vessels used in this service. About four o'clock on the afternoon of September 24, 1929, this boat was in the slip at Newport News, prepared to take on passengers *en route* to Pine Beach and Norfolk. The first vehicle to come on board was a Hupmobile sedan, driven by James C. Cummings, plaintiff's intestate, which took the port or left hand vehicle gangway, and proceeded to within a few feet of a chain barrier, where it stopped. A deck hand, the only employee stationed at that end of the boat, motioned Mr. Cummings forward. Thereupon he started his automobile, which moved up to and through the chain barrier, some fifteen feet along the gangway, and overboard from the eastern end of the boat. Both Mr. Cummings and his wife, who were the occupants of the Hupmobile, were drowned.

Separate actions were instituted and separate judgments obtained by the administrators of Mr. and Mrs. Cummings. We refused a writ of error in the case of Mrs. Cummings' administrator. The allegations, defense, evidence and instructions were substantially the same in both cases, and the only issue not decided by the refusal of the other writ was whether Mr. Cummings was guilty of contributory negligence, and, if so, did such negligence concur with the negligence of the defendant in causing his death.

The defendant is a common carrier and the Virginia decisions have held repeatedly that such a carrier owes to its passengers the duty to use the highest degree of care for their safety known to human prudence and foresight, and is liable for the slightest negligence against which human care and foresight may guard. *Norfolk-Southern R. Co.* v. *Tomlinson,* 116 Va. 153, 81 S. E. 89; *Riggsby* v. *Tritton,* 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280; *C. & O. Ry. Co.* v. *Baker,* 149 Va. 549, 140 S. E. 648, 141 S. E. 753; *Id.,* 150 Va. 647, 143 S. E. 299.

This high degree of care which the defendant owes its passengers was recognized and fairly stated in instruction H, which the court gave at its request:

"The defendant was not an insurer of the safety of Mr. Cummings, but was bound to exercise the highest degree of care that prudence and foresight would demonstrate the necessity of for decedent's safe transportation, and the criterion for ascertaining whether it has fulfilled its duty with respect to the barriers in use on the *Chesapeake* is whether these articles of her equipment were such as a reasonably prudent person would have used in the same or similar circumstances.

"If, therefore, you believe from the evidence that they were of this character, and that the equipment was in good order and condition and of sufficient strength to afford reasonable protection to property and passengers while

they themselves were in the exercise of reasonable care; and that the defendant exercised every other care in the management and operation of that vessel which the highest degree of prudence and foresight could show was necessary for the safety of decedent, then the plaintiff is not entitled to recover and your verdict should be for the defendant."

The jury, under this and other instructions, found the defendant was negligent. The defendant contends that even if it was negligent the plaintiff's intestate was negligent also, and his negligence was a contributing cause to the fatal injury.

The burden was on the defendant to prove contributory negligence, and it contends that it has borne this burden by showing: (1) that the brakes on the car were worn and would not function; (2) that the driver was inexperienced and incompetent; (3) that there was ample room to stop the car both before and after reaching the chain barrier. The evidence on these points, to the extent deemed material, will be discussed in the order stated.

(1) The testimony on the condition of the brakes was in conflict and the verdict of the jury settles this issue.

(2) The only testimony which even tends to show the ability of the driver was that of his son, which is vague and indefinite. The son stated that his father had been driving his car ever since he, the son, had been at work. Just how long the son had been at work previous to the accident does not appear. This testimony, while not contradicted, is not conclusive.

(3) The defendant, in its petition and in its oral argument, stated that the plaintiff's intestate drove on the boat, through the gangway to the forward end of the passenger cabin, which was some twenty-one feet aft of the chain barrier; that there he came to a stop and made some inquiry of the deckhand, and without waiting for a reply to this inquiry or instructions from any one he started the

engine of his car and proceeded with such force as to run over the chock laid on the deck by the deckhand and into the chain, and after breaking that continued a distance of some eighteen feet before he ran overboard, his engine still running as it went over; and that there was ample space for him to have stopped his car after thus starting before he reached the chain, and room to stop between the chain and the end of the gangway.

The above statement entirely ignores the evidence introduced by the plaintiff which tends to show that the plaintiff's intestate drove his car to within eight or ten feet of the chain (not twenty-one feet) before stopping; that he said something to the deck hand, "asked him if he was far enough;" that the deck hand did not hear him and said: "Sir?" and Mr. Cummings repeated the question. The witness, Wilson, did not hear what the deck hand said but saw him motion to Mr. Cummings to move his car forward. This witness, who was the driver of the car immediately following the Cummings car, then started his motor in order to keep close behind the Cummings car. Another witness, who was the driver of a car further behind and who had stopped and gotten out to talk to Mr. Wilson, saw the motion of the deck hand signalling Mr. Cummings to come forward, and on seeing this signal went back to his own car for the purpose of moving it forward in line. Both of these witnesses stated that the deck hand had no chocks in his hand, that none were in place in front of the Cummings car, and that, in their opinion, if chocks had been used to aid the resistance of the chain barrier the motor of the Cummings car would have stalled and the injury avoided.

The witnesses for the defendant estimate the distance between where the Cummings car stopped and the edge of the gangway as approximately forty-one feet; the witnesses for the plaintiff estimate this distance as from twenty-

five to twenty-eight feet. The witnesses for the defendant estimate the speed that the car was going when it struck the chair barrier as from ten to fifteen miles an hour; the witnesses for the plaintiff estimate this speed as less than five miles an hour. The plaintiff's witnesses testified that the chain barrier made only a very small dent where it came in contact with the radiator of the car; the defendant's witnesses admit that there is a very slight dent in the radiator, but contend that this was made in pulling the car from the water and not from striking the chain barrier. The jury inspected the radiator with the indentation therein.

The court, at the request of the defendant, gave five instructions, lettered A, B, C, D and E, on contributory negligence. If subject to any criticism, they place the defendant before the jury in too favorable a light, unless it can be said that as a matter of law the plaintiff's intestate was guilty of negligence. Considering the conflict in evidence as settled by the verdict of the jury, this conclusion can be reached only from the fact that the plaintiff's intestate failed to stop his car within some twenty-eight feet after he started forward in obedience to a signal from the deck hand.

While the plaintiff's intestate was the owner and driver of the car, supervision of its movements and parking on the boat was in the defendant. This is not a case in which the driver proceeded on the boat and along the gangway, through the barrier, at a reckless rate of speed, nor one in which the driver disregarded the directions of the signalman, but here the driver brought his car to a stop in a place of safety and then, pursuant to directions of a servant of the defendant, in good faith attempted to obey the defendant's orders.

The defendant was charged with knowledge that animals and automobiles may not, at all times, be under adequate control. *Shepard* v. *Reed* (C. C. A.), 26 Fed. (2d)

19; *Sparkman* v. *Graham*, 79 Miss. 376, 30 So. 713; *Wilson* v. *Alexander*, 115 Tenn. 125, 88 S. W. 935; *Meisle* v. *N. Y. Central, etc., R. R. Co.*, 219 N. Y. 317, 114 N. E. 347, Ann Cas. 1918E, 1081.

"In the hands of a nervous or unskilled chauffeur an automobile might be awkwardly stopped or started and thus driven off the boat if no proper barriers were interposed. 'It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye.' " *Meisle* v. *N. Y. Central, etc., R. R. Co., supra; Munsey* v. *Webb*, 231 U. S. 150, 34 S. Ct. 44, 58 L. Ed. 162; *Condran* v. *Park*, 213 N. Y. 341, 107 N. E. 565.

In the exercise of due care for the safety of its passengers, it was the defendant's duty to take into consideration such a contingency and provide proper safeguards to prevent any injury which might result therefrom.

The evidence for the plaintiff shows that when the car reached the chain barrier its forward motion was checked; when the chain was seen to part there was a slight lurch forward; as it passed the collapsible gate, intended as a barrier for passengers, the driver threw out his hand in a vain attempt to grasp it; the front wheels dropped over the end of the boat, the car hung in a balance, the chassis resting on the end of the boat with the rear wheels clear of the deck, and after a few seconds the weight of the engine overbalanced the car and it plunged into the water.

Suppose it is admitted that an ordinarily careful driver, driving a properly equipped car in good working order, at a speed of five miles an hour, can by the exercise of ordinary care stop it in twenty-eight feet, that this was not done and the plaintiff's intestate was negligent in failing so to do. Does that fact relieve the defendant from liability? In other words, was this act, or rather failure

to act, on the part of the plaintiff's intestate a proximate or contributing cause of the accident? Much has been written on this subject. In each case, however, the object of the inquiry is to fix upon the wrongdoer the responsibility for the wrongful act which caused the damage.

In this case the defendant directed the plaintiff's intestate to move from a point of safety toward danger; the car proceeded slowly by the deck hand against the chain barrier, the chain gave way, death ensued. No chocks were in place or attempted to be used by the deck hand; the defendant relied wholly upon the strength of the chain barrier to stop the car in the event that should become necessary.

■ We have held that the evidence warranted the jury in finding the defendant negligent. The jury concluded that the defendant had either failed to provide proper barriers and appliances, or had failed to use those provided. The previous negligence of the defendant had thus incapacitated it from avoiding the consequence of the act of the plaintiff's intestate, which it was its duty to have anticipated. The defendant owes an abstract duty to provide the proper safeguards to prevent cars from going overboard. Upon an emergency arising, the abstract duty becomes a concrete duty, in this case specifically owing to the plaintiff's intestate. Had the abstract duty been performed by having available and in place the proper safeguards, no injury would have resulted from the act of the plaintiff's intestate. The jury having found the defendant negligent in this particular, this negligence was the sole proximate cause of the death of the plaintiff's intestate. This principle finds support in the following cases:

■ " 'The negligence that produced such a state of disability is not merely part of the inducing causes—a remote cause or a cause merely *sine qua non*—it is, in very truth, the efficient, the proximate, the decisive cause of the incapacity, and therefore of the mischief * * *.

Negligence of a defendant incapacitating him from taking due care to avoid the consequences of the plaintiff's negligence, may, in some cases, though anterior in point of time to the plaintiff's negligence, constitute "ultimate" negligence, rendering the defendant liable notwithstanding a finding of contributory negligence of the plaintiff  \*  \*  \*.'

"The principle that the contributory negligence of a plaintiff will not disentitle him to recover damages if the defendant, by the exercise of care might have avoided the result of that negligence, applies where the defendant, although not committing any negligent act subsequently to the plaintiff's negligence, has incapacitated himself by his previous negligence from exercising such care as would have avoided the result of the plaintiff's negligence." *British Columbia Electric Railway* v. *Loach* (1916), 1 A. C. 719.

"In all cases of damage by collision on land or sea, there are three ways in which the question of contributory negligence may arise.    A. is suing for damage thereby received. He was negligent, but his negligence had brought about a state of things in which there would have been no damage if B. had not been subsequently and severably negligent. A. recovers in full  \*  \*  \*.

"In some cases there may have been negligence on the part of a plaintiff remotely connected with the accident; and in these cases the question arises, whether the defendant by the exercise of ordinary care and skill might have avoided the accident, notwithstanding the negligence of the plaintiff, as in the often-quoted Donkey case: *Davies* v. *Mann.* (1) There, although without the negligence of the plaintiff the accident could not have happened, the negligence is not supposed to have contributed to the accident within the rule upon this subject; and, if the accident might have been avoided by the exercise of ordinary care and skill on the part of the defendant, to his gross negligence it is entirely ascribed, he and he only proximately causing the loss." *S. S. Volute* (1922) 1 A. C. 129.

" 'The true rule is that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer, and likely to flow from his act.' *West Mahanoy Twp.* v. *Watson*, 112 Pa. 574, 3 Atl. 866, 56 Am. Rep. 336. To the same effect is *Behling* v. *Southwest Pennsylvania Pipe Lines*, 160 Pa. 359, 28 Atl. 777, 40 Am. St. Rep. 724. And so all the cases cited on both sides, either expressly or by implication, rule * * *. Here was an independent, intermediate cause or omission of duty, without which, notwithstanding the primary cause, the injury would not have been suffered. And the jury, on sufficient evidence, have found defendant was negligent in maintaining a defective guard rail at that point. Says Appleton, Ch. J., in *Moulton* v. *Sanford*, 51 Me. 134: 'Ordinarily, that condition is usually termed the "cause" whose share in the matter is the most conspicuous, and is the most immediately preceding and proximate in the event.' " *Sturgis* v. *Kountz*, 165 Pa. 358, 30 Atl. 976, 979, 27 L. R. A. 391. See, also, *Virginia Ry. & Power Co.* v. *Taylor*, 144 Va. 496, 132 S. E. 334; *Richmond Traction Co.* v. *Martin*, 102 Va. 212, 45 S. E. 886.

The line which separates accidents for which the defendant is not liable from accidents creating responsibility by reason of negligence is often narrow and difficult to be drawn, and it is well not to draw the line dogmatically. *Meisle* v. *N. Y. Central, etc., R. R. Co., supra.*

From the evidence, reasonable men may differ in their conclusions. The verdict of the jury has the approval of the trial judge. We find no reversible error, and therefore affirm the judgment.

*Affirmed.*

EPES, J., dissenting.

After a careful reading and critical examination of all

the evidence in this case in the light of the briefs and the argument of counsel, I reached these conclusions: (1) The evidence, as a matter of law, is insufficient to establish any negligence on the part of the Chesapeake Ferry Company which was the proximate cause of the death of Cummings; and (2) the evidence, as a matter of law, establishes negligence on the part of Cummings, and that his negligence was the sole proximate cause of his death.

Since having read the opinion of the court I have again carefully re-examined all of the evidence in the record in the light of this opinion; but I find that, notwithstanding the high regard in which I hold the ability and judgment of my associates, my former opinion remains unchanged. Therefore, I deem it to be my judicial duty to register my actual judgment on the case, whether it be right or wrong, and must dissent from the judgment of the court.

Of course, if it be literally true that the Chesapeake Ferry Company owed to its passengers the duty to use the *highest degree of care for their safety known to human prudence and foresight, and was liable for the slightest negligence against which human care and foresight may guard*, then the court is correct in its conclusion; for this would require the Chesapeake Ferry Company to use some device which would make it impossible for even an inexperienced, careless, and negligent chauffeur to drive his automobile off the ferry. But I think that such is not the legal standard of care in such cases. In this connection I refer to my dissenting opinion in *Richmond-Ashland Ry. Co.* v. *Jackson*, handed down at the January term 1932, 157 Va. 628, 162 S. E. 18.

There is much evidence to the effect that after Cummings came to a stop a deck hand asked him to move forward and then did not place a chock for him to stop his car against. I think it was not negligence to ask him to move forward or not to place a chock under his wheel before he, after moving forward, had stopped.

There is some testimony tending to show that the sill to which the upright post to which the barrier chain was fastened was rotten. But however that may be, no weakness of this sill caused or contributed to causing this accident. Though the post was pulled over by the force exerted upon it by the moving automobile, it did not give away. The chain is what broke.

If there was any negligence on the part of the ferry company it was in having a barrier chain of insufficient strength. The testimony of the ferry company is to the effect that the chain used had a tensile strength of 9,000 pounds. The only evidence introduced by the plaintiff which tends to show the strength or lack of strength of this chain was the fact that it broke under the strain placed upon it when this automobile was driven against it.

Every chain has a weakest link. The fact that a link breaks when the chain is subjected to a certain stress tends strongly to prove that link to have been the weakest link in the chain. But it does not tend to prove that the link was worn or otherwise defective, unless it be further made to appear that the stress to which the chain was subjected was less than such a chain normally should be able to withstand; and this record does not prove that the stress to which this chain was subjected by the impact on it of this car was less than that to which a steady pull of a 9,000 pound weight would have subjected it.

The only inference which can be fairly drawn from the plaintiff's own evidence is that this car was driven against this chain with great force. The car was in low gear; and the very purpose of low gear is to get sustained high driving power. The driver had become excited and was *continuously* feeding gas to his engine from the time he started to move forward until he went overboard, certainly until after the car had broken through the chain and the collapsible gate beyond. So great was the amount of gas fed to

the engine that within from twenty-one to twenty-four feet the speed of the car (in low gear) had been accelerated from nothing to seven and one-half feet per second (five miles per hour); and so great was the power developed that it not only broke through this chain and knocked down or aside the collapsible gate beyond, but one of its wheels ran over the post to the collapsible gate, which was an effective chock, with only momentary diminution in the speed of the car as it struck the chain and the gate post beyond. (While this last fact appears from the evidence of the ferry company it is not contradicted.) There was no slackening in the speed of the car from the time it started to move forward until it went overboard, except a momentary check when it struck the chain; and there is no evidence which even tends to show that the brakes were at any time applied. It seems to me that the irresistible inference, indeed the only inference, that can be drawn from these facts is that the driver became excited, stepped on the accelerator when intending to step on the brake pedal, and consequently drove the car under all the power it could develop against the chain and then on overboard.

No matter what marks were, or were not, made on the car by its contact with the chain, or what the strength of the sill to which the chain post was attached, given the facts proven by the plaintiff's own evidence, the immutable laws of physics establish for us, I think, beyond contravention, that this car struck this chain not a slight blow, but with great momentum and great force; and subjected it to an immense stress. The momentum of the car (at five miles per hour) when it struck this chain was from the record not less than 16,000 foot pounds per second (it in fact exceeded 21,000 foot pounds per second). In addition to the force exerted by the impact of an object having this momentum, the car exerted on this chain at and after the

moment of impact all the force of the driving power of its engine in low gear under a sustained supply of gas.

The ultimate question presented is, I think, this question of law: Is a ferry company required to place barriers across its gangway which will withstand the force of an automobile of the weight and power of a Hup sedan when driven against it in low gear at a speed of at least five miles per hour with the gas being fed to it in such quantities and so continuously that very substantial impediments to its progress produce but a momentary slackening of its speed? I think not.

To provide a barrier which will prevent a nervous or unskilled chauffeur, who has awkwardly stopped or started his automobile, from driving off the boat, is a very different thing from providing a barrier which will stop an automobile catapulted against it with the force that the elementary laws of physics demonstrate that the automobile here in question was driven against this barrier chain.

The court in its opinion says that, "in the exercise of due care for the safety of its passengers, it was the defendant's duty to take into consideration such a contingency" (*i. e.*, that a passenger might undertake to drive his automobile through the barrier in low gear, in a state of excitement, with his foot on the accelerator feeding the gas to his engine) "and provide proper safeguards to prevent any injury which might result therefrom." (Matter in parenthesis is mine.)

Suppose the car in question had been a heavy high-powered truck of 40,000 pounds capacity. Did the ferry company owe the duty to the driver of it to erect a barrier through which the driver of this truck could not drive the truck in low gear and under full power? If so, what type of barrier would the court suggest that the ferry company place there to meet its views? If not, where lies the limitation and by what principle is it defined?

If there had been a man standing just beyond the chain with his back to Cummings and Cummings under the facts

proven by the plaintiff's evidence had driven his car against him and killed him, would not Cummings upon this record have been guilty of negligence? If Cummings would have been guilty of negligence in killing such a man under the facts of this case, why is it that he is not guilty of negligence in killing himself? If the plaintiff's testimony is to be believed, Cummings drove his car twenty-eight feet (the defendant's testimony is that it was thirty-seven feet) at a speed of about five miles an hour straight towards the edge of the ferry boat without stopping, without cutting off his power, and without making any effort to stop so far as this record shows, unless his stepping on the accelerator by mistake instead of upon his brake pedal was such an effort. It seems to me that there is but one inference that can be drawn from the facts proven by the plaintiff's own testimony: Cummings was guilty of negligence and his negligence was the sole proximate cause of his death. I do not understand that a common carrier is required to make provision to protect its passengers against their own negligence.

From what I have already said, it is patent that in my opinion some of the instructions given were erroneous; but it is not necessary to discuss them here.

Mrs. Cummings was in the automobile with her husband when it went off this ferry, and an action was brought by her administrator to recover for her death. This action was tried before the instant case was tried and a judgment rendered in favor of the plaintiff. A petition for a writ of error to this judgment was refused by this court at its September term 1930, *with my concurrence*. The witnesses who testified in relation to whether the ferry company was guilty of negligence were the same in that case as in this; and their testimony was very much the same in both cases. There is, however, the following very notable difference in the testimony in the two cases. In Mrs. Cummings' case

the witness Herrick testified that he saw the link that had parted and that it was "very poor—it was thin," and that "it was worn." The other evidence in the case, however, tended to shown that the broken link was never seen by anyone after the accident, and certainly every probability was that when the chain snapped this link was hurled far away. That Herrick never saw this link would seem to be apparent from the fact that though in the former case stress was laid on this testimony, in the instant case he was not asked anything about it.

Since the argument of the instant case I have also again read and examined with care all the evidence in the former case; and I am now convinced that I was wrong in my judgment when I concurred in the refusal of the writ in that case. Perhaps I permitted the testimony of Herrick as to having seen the broken link and its condition to have an undue influence in arriving at my conclusion that the writ should be refused. But, however that may be, I am now of the opinion that I did err in that conclusion, and make the only amend which I am able to make, that is, I frankly confess my error.