Thomas Giroux, Claimant, *v.* State of New York, Defendant.
(Claim No. 27923.)

Court of Claims, October 2, 1948.

*Howard J. Blaugrund* and *Salvador J. Capecelatro* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

Lambiase, J. On March 28, 1945, at or about 8:30 in the morning, claimant was driving his Ford truck, equipped with ten wheels, in a general easterly direction on New York State Highway No. 460, also known as Route 28, and particularly at a point thereon about three miles northwest of the village of Herkimer, New York. The truck, unloaded, weighed 7,800 pounds, and it was carrying on that day a load of logs weighing 12 tons.

At or near the point above mentioned, claimant found the road blocked by an accumulation of dirt, stones, rocks, and debris along with a tree ten inches in diameter, all of which lay across the entire width of the pavement of the highway. He stopped his truck at a point some distance west of the tree, the circumstances under which he did so and the exact point at which he stopped being the subject of controversy herein. Within ten or fifteen minutes after arriving at said obstruction in the road which concededly had been caused by two landslides occurring earlier that morning, there occurred a third landslide which carried the truck and its load off the highway, through a pipe railing erected on the north side thereof so that the front end of the truck came to rest on the railroad track located immediately to the north of said highway, causing considerable damage to his truck and depriving him of the use thereof for a period of ten days. This claim was filed to recover for said items of damage. The logs were not the property of the claimant, and he makes no claim for them. Furthermore, what happened to the logs following the accident, was not established with any degree of certainty upon the trial, although presumably they disappeared beneath the waters of West Canada Creek located a short distance north of the point of the accident.

This claim is predicated upon the alleged negligence of the State, the particulars thereof being set forth in the claim. The State, on the other hand, denies any negligence or liability on its part, and maintains further that the accident and the damages resulting therefrom to claimant occurred solely through his negligence.

The paved portion of New York State Highway No. 460, also known as Route 28, at the point of the accident, consists of two lanes of concrete aggregating 23 feet in width. Bordering said highway at said point, on the south side thereof, and for a distance of 400 feet westerly therefrom and for a distance of 1,000 feet easterly therefrom, there is a steep bank of an average height of 100 feet with a so-called '' one on one '' slope generally. The material in said slope consists of stones, dirt, '' gravelly sand '', with trees and shrubbery growing thereon. It is fairly compact standing as it does on a steep slope, although after heavy rains and thaws it loosens up, becomes '' soupy '' in consistency, and runs down the face of the bank and on to the pavement of the highway, often overrunning the same and spilling over on to the railroad track located to the north of and three feet below the pavement of said highway.

In or about the year 1908, the State constructed at said point, and generally along the base of said slope, a concrete retaining wall varying in height from 3.5 feet to 6 feet, and a number of concrete culverts. The concrete wall was constructed to contain said material and to prevent its coming down on to the highway and on to the railroad track, while the culverts were for the purpose of carrying off the water which coursed down the face of the slope. One of these culverts is located about ten to twenty feet east of the point of the accident herein described. In time a channel leading to each of these culverts down the face of said slope was gouged out by the erosive action of the water as it flowed downward.

Ten or twelve landslides of sufficient magnitude to cover the entire pavement of the highway and part of the aforementioned railroad track had occurred along this 1,400-foot strip between the year 1908 and the day of the accident herein. In addition thereto there had been a number of lesser landslides which, while they had brought down material upon the highway, had not carried down enough to obstruct traffic. These landslides occurred generally in late Spring of each year after the melting of snow on the slope of the bank, and generally after severe or prolonged rains at other times of the year. Most of the testimony with reference to landslides was given by employees of the State of New York, and it is not disputed that the State of New York was cognizant of the conditions obtaining at and in the vicinity of the point of the accident. In fact, the State admitted upon the trial that there had been previous landslides in this location.

The frequency with which rocks, stones, earth, and debris had fallen upon the highway during each Spring and other' times during the year since the concrete wall and the culverts had been constructed in 1908 was sufficient to charge the State with notice of a dangerous condition. Furthermore, it is fair to state that the officials and employees of the State of New York had actual knowledge of the dangers to travelers on this highway. Notwithstanding, the State had posted no signs along this strip of the highway warning the users thereof of the danger of landslides.

The doctrine of liability in situations such as is presented herein was defined in *Shaknis* v. *State of New York* (251 App. Div. 767, affd. *sub nom. Doulin* v. *State of New York,* 277 N. Y. 558). It is true that in the *Shaknis* case (*supra*) the State owned the adjacent property whence came the landslide while here the right of way line did not include the embankment. But that fact does not relieve the State from the duty to afford reasonably

safe conditions for travel. (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85; *Jacobs* v. *State of New York, Orrey* v. *State of New York, Kelly* v. *State of New York, Lusch* v. *State of New York,* 177 Misc. 70, affd. 263 App. Div. 1047.) As was said by the court in the *Shaknis* case at page 767 of 251 Appellate Division: " * * * if the highway could not be made safe for travel it should have been closed." It was the duty of the State herein to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset,* 171 N. Y. 99, 105, 106.) The State, through its officers, agents, and employees could have reasonably anticipated and foreseen the occurrence of such an accident as happened on the day in question. (*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339; *Flaherty* v. *State of New York,* 296 N. Y. 342, and cases cited therein; *Torrey* v. *State of New York,* 266 App. Div. 900.) In view of the foregoing we find that the State of New York was negligent herein.

However, it has been urged with great vigor by the State that the claimant is guilty of negligence causing the accident or contributing as a proximate cause to the happening thereof. We pass now, therefore, to a consideration of that phase of the case.

Of course, where a claimant's own negligence causes or contributes as a proximate cause to the happening of an accident and to the damages resulting therefrom, he cannot recover. Upon the record herein the question of claimant's contributory negligence or lack of it cannot be determined by us as a matter of law, but we must resolve it as a question of fact. "The question of contributory negligence ordinarily is a question of fact. It is only when there is no dispute upon the facts and only one conclusion can be drawn therefrom that it may be decided as a question of law." (*Nelson* v. *Nygren,* 259 N. Y. 71, 76.) Considering it, therefore, as a question of fact and upon the entire record, we are of the opinion that the evidence fails to establish that claimant was free from contributory negligence.

The highway at the point of the accident is fairly level with a gradual curve to the northwest. The sight distance to the scene of the accident for one traveling in a general easterly direction, as was this claimant, is 1,000 feet. Claimant testified that he saw the dirt, debris, and the tree at the time that he stopped his truck, that is, when he was within 50 or 60 feet from the tree. He admits that he could have seen this obstruction in the highway from a greater distance therefrom than that at which he actually observed it. The evidence of the physical surroundings and the

fact that others who were driving automobiles behind claimant at the time observed the obstruction on the highway and stopped their automobiles at much greater distances westerly therefrom than did claimant amply emphasize this point.

There is a sharp conflict in the evidence as to just at what point on the highway west of the obstruction claimant did bring his truck to a final stop before the happening of the accident. It is his testimony that he approached within 50 or 60 feet of the tree which lay across the pavement of the highway, stopped his truck, and did not again move it before the accident. On the other hand, there is testimony from an employee of the State and from at least one person not connected with the State, that claimant, after stopping his truck some distance to the west of the obstruction, started up again and drove it 40 to 50 feet toward and so close to the accumulated dirt and debris that his front wheels were actually in the mud. The evidence is compelling that claimant did move his truck after he had stopped it the first time some 50 to 60 feet west of the tree. Claimant did this in the face of the admitted fact that he was told by an employee of the State to stay where he was.

Claimant admits that when he arrived at the point of the obstruction, he wanted to hook a chain around the tree to pull it off the highway so that he could get through with his truck; and that he was told by an employee of the State that he was not to do that.

We deem it a fair inference from the evidence that he moved his truck forward and toward the tree in order to get closer to it so as to attach a chain to it, ultimately removing it from the highway. He did not have time to accomplish this because of the occurrence of the landslide which carried away his truck. In all, some ten to fifteen minutes had elapsed between the time of claimant's arrival at the obstruction on the highway and the happening of the accident.

" A person in the public way is usually entitled to expect that it will be free from obstruction. Thus, in the leading case of *Clifford* v. *Dam* (*supra*) where the plaintiff fell into an uncovered coal hole, it was held that the plaintiff need not have been alert for dangerous conditions. The jury should be charged that a person in walking along the sidewalk need not be expecting obstructions to safe passage; but if the plaintiff sees the obstruction and with foresight of the consequences unreasonably attempts to exercise the legal right of passage regardless of the risk, then there may be no recovery. The unreasonableness under all the circumstances would be measured by the extent

of the risk foreseen and the value of the right to be secured." (*Delaney* v. *Philhern Realty Holding Corp.,* 280 N. Y. 461, 466.)

Claimant was obligated to use for his own protection the care which a reasonably prudent and vigilant man would use under similar circumstances to protect himself from injury. (*Christensen* v. *Hannon, Inc.,* 230 N. Y. 205.) In that respect it is obvious, therefore, that he must realize that he is in danger. He must have knowledge of the danger threatening through his acts before he can be required to use care to protect himself. That knowledge may be actual or imputed, but it is an essential in establishing contributory negligence. (*Murphy* v. *Hudson River Tel. Co.,* 196 N. Y. 505.) It is not only the danger which a claimant has seen and failed to protect himself against that may render him guilty of contributory negligence. He not only has a duty to use care in the facing of known danger, but he further has a duty to use ordinary care in observing and appreciating danger. (*Hudson* v. *Church of the Holy Trinity,* 250 N. Y. 513; Restatement, Torts, § 474, comment b in part.) In other words, he must use the same care in observing danger that a reasonably prudent and vigilant man will use. That is, ordinary care. He is not required to apprehend danger under all conditions, and will not be held guilty of contributory negligence where he failed to observe a danger that he had no reason to apprehend under the circumstances surrounding him at the time. (*Loughrain* v. *Autophone Co.,* 77 App. Div. 542; *Quirk* v. *Siegel-Cooper Co.,* 43 App. Div. 464.)

"The plaintiff may be barred from recovery by exposing himself to a danger created by the defendant's negligence even though there is no other method available by which he could secure the exercise of his right or privilege. Whether the risk is so great that the reasonable man would forego the exercise of his right or privilege rather than encounter it depends upon the circumstances of each particular case and, except in situations which have recurred with such frequency as to lead to binding judicial decision, is a matter for the judgment of court and jury * * *." (Restatement, Torts, § 473, comment d in part.)

Claimant was very familiar with this highway including that part thereof where the accident occurred. He had been making two round trips daily drawing logs from Old Forge, New York, to Herkimer, New York, since 1944, in the course of which he traveled upon it. He knew of the steep slope, and was fully acquainted with the physical surroundings at the scene of the

accident. Furthermore, he had seen and observed other land-slides on this particular stretch of the highway where the accident occurred.

The question herein is not whether this claimant was convinced that he could do with safety what he did, but whether the prudent and competent man, acting prudently, would have been so convinced. (*Mertz* v. *Connecticut Co.,* 217 N. Y. 475, 477.)

It is true that the law makes allowances for mistakes and errors of judgment which are likely to happen in an emergency (*Lowery* v. *Manhattan Ry. Co.,* 99 N. Y. 158), but it is equally true that where merely for the purpose of avoiding some inconvenience a person risks injury, he may be guilty of contributory negligence. To excuse such an act and free the claimant from the charge of contributory negligence, there must be a coercion of circumstances which did not leave him in the free and untrammeled possession of his faculties and judgment. (*Solomon* v. *Manhattan Ry. Co.,* 103 N. Y. 437, 443.) But we do not think that such was the case here for claimant's actions herein were admittedly not induced by impending danger to person and to property, but by the fact that he wanted to get by with his load of logs. What other travelers at the time saw and knew in respect to matters equally open to claimant's observation must be presumed to have been seen and known by him; especially is this presumption a reasonable one in respect to matters which common prudence required him to know and to observe before he attempted to do what he did herein. One of the very dangers of the situation as it confronted the claimant arose from the fact that all the contingencies upon which the success of his effort to get through the road block depended could not be anticipated. (*Solomon* v. *Manhattan Ry. Co., supra.*) If he was unable to perceive existing conditions, that inability imposed upon him the duty of refraining from proceeding farther without first finding out where he might safely go. (*Rohrbacher* v. *Gillig,* 203 N. Y. 413, 417.) If one neglects to proceed cautiously, he must accept the consequences of his undue precipitation. (*Piper* v. *New York Central & Hudson Riv. R. R. Co.,* 156 N. Y. 224.)

"It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." (*Meisle* v. *New York Central & Hudson River R. R. Co.,* 219 N. Y. 317, 320. See, also, *Washington & Georgetown R. R. Co.* v. *Hickey,* 166 U. S. 521, 526, 527; *Condran* v. *Park & Tilford,* 213 N. Y. 341.) Although the immediately fore-

going was said of and concerning a defendant, we feel that it is equally applicable in arriving at a conclusion herein on the question of whether or no claimant was free from contributory negligence. We are of the opinion that under the circumstances herein it cannot be asserted without running contrary to the evidence and to human experience that the possibility of an accident, such as happened to the claimant, was not "clear to the ordinarily prudent eye."

We hold that the evidence establishes that the claimant is guilty of negligence contributing as a proximate cause to the happening of the accident described in his claim and to the damages resulting to him therefrom. Consequently, claimant cannot recover.

In view of what we have determined, we neither reach nor discuss any other question raised herein.

Claimant's claim herein, therefore, must and hereby is dismissed on the merits.