On November 26, 1911, plaintiff's intestate, Frank Meisle, was a passenger on defendant's steam ferry boat from Weehawken to West Forty-second street. A portion of the boat called the "horse runway" was set apart for vehicles, the foremost of which were placed about seventy feet from the bow. Passengers used the forward part of the boat in front of the vehicles. At each end of the boat were gates, three feet high, made of iron bars bolted together. Back of these were two chains to be stretched across the width of the ferry boat and hooked to posts. When properly in place they swung fifteen inches above the deck. The purpose for which these chains were so placed was, according to the testimony of plaintiff's witnesses, to check careless drivers from running their teams or machines past the lines thus indicated. Chocks were also provided to be used by the deck hands in blocking vehicles.
Edward Barry drove his automobile on to the ferry boat at Weehawken and stopped it about ten feet back of *Page 320 
the chain nearest the gates at the forward end of the boat. The occupants of the car then left it. Only one chain was in use at the time, which was lying on the deck of the ferry boat for its entire length. Plaintiff's intestate was standing in the bow of the ferry boat back of the gates and in front of the automobile. When the ferry boat reached a point about sixty feet from the New York dock, one of the occupants of the car cranked it, starting the engine. Immediately the automobile started forward, ran over the chain which was lying on the deck of the boat, struck plaintiff's intestate and forced him through the gates with it into the river, causing his death by drowning. Plaintiff recovered a verdict in the trial court against the defendant for causing the death of the intestate by its negligence. The Appellate Division held that there was no evidence to justify a finding that the defendant was negligent or that it could have anticipated the accident, reversed the judgment of the court below and dismissed the complaint. We think that this was error.
That no ordinarily prudent eye would see that an automobile on a ferry boat might be carelessly or accidentally started and that an accident might occur to a passenger if no safeguards were maintained against it, cannot be asserted without running counter to human experience. In the hands of a nervous or unskilled chauffeur an automobile might be awkwardly stopped or started and thus driven off the boat if no proper barriers were interposed. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." (Munsey v. Webb, 231 U.S. 150, 156; Condran v. Park Tilford, 213 N.Y. 341.) Automobiles, like horses, do run off ferry boats and runaway horses and motor cars do not choose their course with regard to the safety of bystanders.
The defendant urges that it exercised reasonable care *Page 321 
and that no more is required. Its contention as to the rule is correct, but "Ferrymen, by reason of the nature of the franchise they exercise, and the character of the services they render to the public, are held to extreme diligence and care, and to a stringent liability for any neglect or omission of duty." (Wyckoff v. Queens Co. Ferry Co., 52 N.Y. 32, 34.) Reasonable care is a relative term and such is the rule of reasonable care for ferrymen. If we add to that general duty the further duty of recognizing that automobiles, while not inherently dangerous, may from conditions of place and circumstance become dangerous instrumentalities, the meaning of reasonable care in this connection is readily suggested. Strict diligence and a due regard for the value of human life do not constitute the ferryman an insurer of the safety of his passengers. Even unreasonable expense and trouble are not insisted upon as against all possible accident and misadventure. But as ANDREWS, J., said in Loftus
v. Union Ferry Co. of Brooklyn (84 N.Y. 455, 460), the line which separates accidents for which the defendant is not liable and accidents creating responsibility by reason of negligence is "often narrow and difficult to be drawn," and it is well not to draw the line dogmatically. This is not a case of sufficient barriers and safeguards and proper supervision unavailing against unforeseen calamity. The chain which properly swung fifteen inches above the deck lay flat on the deck. The chocks were not placed under the wheels of the automobile. Nothing was done to prevent the starting of the engine. Not the slightest obstacle was interposed to the progress of the car when once started. Perhaps no practical appliances and no ordinary watchfulness on the part of the defendant's employees would have been availing, but we cannot say this as matter of law. We do not sufficiently understand the operation of ferry boats to know how careful it may be in this regard. In any event, the automobile did not break down suitable barriers, for no *Page 322 
barriers were interposed. The case is, therefore, unlikeMcGrell v. Buffalo O.B. Co. (153 N.Y. 265) and cases cited. The duty of the defendant was to provide a practical barrier and exercise reasonable supervision over the automobiles while they were on the ferry boat. (Wyckoff v. Queens Co. Ferry Co.,supra.) The question of defendant's negligence should, therefore, be submitted to the jury. As the judgment appealed from was rendered after September 1, 1914, and it appears that the Appellate Division has reviewed the facts and is not satisfied therewith, this court should reverse the judgment and grant a new trial. (Code Civ. Pro. § 1346; Middleton v.Whitridge, 213 N.Y. 499.)
The judgment should be reversed and new trial granted, with costs in this court and in the Appellate Division to abide the event.
WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and CARDOZO, JJ., concur.
Judgment reversed, etc.