## SHEPARD et al. v. REED et al.

Circuit Court of Appeals, Sixth Circuit.
May 10, 1928.

No. 5003.

1. **Appeal and error** ☞901—Appellant, seeking reversal on questions of fact on which evidence was conflicting, must show that judgment is against decided preponderance of evidence.

Where reversal is sought on questions of fact, in reference to which the evidence was conflicting, appellant has burden of showing that judgment of District Court is against a decided preponderance of the evidence.

2. **Ferries** ☞32—Operators of ferry as common carriers for hire must equip ferryboats with appliances reasonably necessary for safety of passengers and property.

The operators of a ferry are common carriers for hire, and as such are required to equip their ferryboats with such guards rails, chains, barriers, and other appliances as are reasonably necessary to secure the safety of passengers and property in transit.

3. **Evidence** ☞574—Testimony based on observing driver at time of accident cannot be accepted as preponderance of evidence on question of driver's experience.

In action for death of one driving truck onto ferryboat, and going into river and drowning, testimony of witnesses as to decedent's experience or lack of experience, based upon what they observed at time of accident, cannot be accepted as a preponderance of evidence on question of decedent's experience in handling truck, in disregard of testimony of witnesses who had positive knowledge that decedent had been driving same truck for four or five months prior to accident.

4. **Ferries** ☞32—Ferrymen are chargeable with knowledge that animals and automobiles may not always be under adequate control.

Ferrymen are chargeable with knowledge that animals and automobiles may not at all times be under adequate control.

5. **Ferries** ☞32—Theory based on proper barriers having been provided cannot excuse operators of ferry from duty to provide sufficient barriers.

Mere theory or conjecture as to what would have happened if proper barriers had been provided cannot excuse owners and operators of ferry from exercise of due care to provide barriers of sufficient strength to afford reasonable protection to property and passengers.

6. **Ferries** ☞33—Evidence held to sustain judgment for death of one drowned on truck going over ferryboat into river.

In action for death of one driving truck onto ferryboat, and continuing into river and being drowned, evidence as to difference in height between decks of embarkation barge and ferry barge, width of ferry barge, and lack of substantial barrier *held* sufficient to sustain judgment for plaintiff.

Appeal from the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Libel by Lyman Reed and another, by their next friend, Mrs. F. A. Reed, against F. H. Shepard and others. Judgment for libelants, and respondents appeal. Affirmed.

Wils Davis, of Memphis, Tenn. (Davis, Costen & Wallace, of Memphis, Tenn., L. Jerre Cooper, of Dyersburg, Tenn., and C. E. Bragg, of Caruthersville, Mo., on the brief), for appellants.

John R. Walker, Jr., of Memphis, Tenn. (John E. McCall, of Memphis, Tenn., and Neill Reed, of Blytheville, Ark., on the brief), for appellees.

Before DONAHUE and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

DONAHUE, Circuit Judge. The appellants operated a ferry across the Mississippi river between Cottonwood Point, Mo., and the Tennessee shore. F. H. Shepard and I. L. Shepard owned the motorboat J. J. Finley and a barge towed by it. J. M. Taylor and E. M. Huffman owned the motorboat Louise and a barge towed by it. These motorboats and their barges were used jointly in the operation of this ferry, and the profits arising therefrom were divided between the respective owners.

F. A. Reed desired transportation for himself and his motor truck from Cottonwood Point, Mo., to the Tennessee side of the river, and for that purpose drove his truck to the place on the Missouri side where the ferry received passengers and property for transportation. He left his truck on the bank, walked down to the ferry, and asked the respondent's agents and employees in charge of its operation if they were ready to receive him. They told him they were ready, and directed him to drive his truck down the embankment and on the ferry barge. The barge towed by the J. J. Finley was moored next to the shore and used as a landing and embarkation barge, and the Louise and her barge, then being used by respondents to transport passengers, automobiles, and other property across the river, were lashed to the river side of the Finley barge, so that it became necessary for passengers and vehicles to cross the Finley barge to reach the Louise barge. As the barges were so positioned in relation to each other, the deck or platform of the Louise barge was several inches higher than the deck of the Finley barge, and this difference in height was considerably increas-

ed by the weight of the truck when it was on the Finley barge. Reed drove his truck across the Finley or landing and embarkation barge, on the Louise or ferry barge, and through the opening on the opposite side of the Louise barge, into the river, and was drowned.

Lyman Reed and J. M. Reed, minor sons of F. A. Reed, by their next friend, Mrs. F. A. Reed, filed a libel in admiralty to recover damages under favor of the Missouri statute, alleging, among other things, that the respondents were guilty of negligence in not placing the decks of the barges at the same level, in not providing a safe means of approach from one barge to the other, and in not providing proper "scotches" or sufficient guard rails across the opening on the river side of the Louise barge, and that respondents' negligence in these respects was the proximate cause of the accident resulting in the death of their father, F. A. Reed.

The respondents' answer admits the joint use of the vessels and barges above mentioned, in the operation of this ferry, denies all negligence on their part in the equipment or operation thereof, and avers that the accident was caused solely by the negligence and unskillfulness of Reed. The trial court found in favor of the libelants and assessed damages in the sum of $4,500. The respondents appeal.

It is insisted upon the part of the appellants that the decree of the District Court is not sustained by the evidence and is contrary to the decided preponderance of the evidence. [1] Reversal is sought solely on questions of fact in reference to which the evidence is conflicting. The trial judge saw and heard the witnesses. Counsel for appellants, in their printed brief, correctly state the rule that under such circumstances the burden is upon appellants to show that the judgment of the District Court is against a decided preponderance of the evidence. Monongahela River Consol. C. & C. Co. v. Schinnerer (C. C. A.) 196 F. 375, 379; City of Cleveland v. Chisholm (C. C. A.) 90 F. 431, 438; Lew Loy v. U. S. (C. C. A.) 242 F. 405, 408.

The evidence is conflicting, particularly in reference to the use of "stages" to equalize the difference in height of the platforms or decks of the respective barges, the use of "scotches" to block automobiles being driven upon the ferry, and also conflicting to some extent as to what was said and what occurred in placing the Reed truck upon the outer or ferry barge; but there is no substantial conflict in reference to other facts and circumstances that are helpful, if not controlling, in arriving at a correct conclusion as to the proximate cause of the accident.

There is no dispute in reference to there being a difference in elevation of the decks of the embarkation and ferry barges, or that this difference in their respective levels would be somewhat increased by the weight of the truck on the embarkation barge. It necessarily follows that, even if "stages" were used to assist the truck in rising from the lower to the higher level, more motor power would be necessary to force the truck up this grade than would be required in coming down the embankment, or than would be required if the decks of the barges were on a common level. It would therefore appear far more probable that the engine of the truck "stalled," if it did in fact "stall," when its rear wheels were rising or starting to rise from the lower to the upper deck level, rather than that the motor "stalled" or "died" after all four wheels of the truck had reached the level of the deck of the outer barge.

It further appears that one witness for respondents testified that, when the motor "stalled," the rear wheels of the truck were two feet on the deck of the ferry barge. Another witness for respondents testified that the deck of the ferry barge was but 18 feet wide, and that the length of the truck from the outer part of the front tire casings to the outer part of the rear tire casings was 16 feet. Without allowing for any projection of the engine and body of the truck to the front and rear of the wheels, this would have carried the truck practically to the river edge of the deck. There is, however, testimony tending to prove that Reed had turned the front wheels, so as to drive the car lengthwise of the barge, and that an employé of respondents straightened the wheels and directed him to drive straight across the barge. If the rear wheels of the truck were then 2 feet on the deck of the outer barge, and the deck of this barge was but 18 feet wide, it would not seem possible for Reed to drive straight across this deck without backing the truck, so that the rear wheels would rest on the embarkation barge. These facts also tend strongly to the conclusion that, when the engine "stalled," and when the wheels were straightened and directions given to Reed to drive straight across the deck of the Louise barge, the rear wheels were on the Finley barge, or rising therefrom.

However that may be, there is practically no dispute as to the character of the barrier placed across the opening in the opposite side of the transportation barge. According to the testimony introduced by respondents,

this was a hackberry pole "between 3 and 4 inches at one end, and possibly 4 or 5 at the other." It is not important whether this was a hackberry pole of the dimensions stated, or a 2x4 cypress plank narrowing at one end to 2 inches; neither would be such a barrier as would offer any substantial resistance to a motor truck in motion. Nor would loose "scotches," placed on the edge of the deck so that they could be readily pushed therefrom, or "jumped" by the wheels of the approaching truck.

[2] The respondents were common carriers for hire, and as such were required to equip their ferryboats with such guard rails, chains, barriers, and other appliances as are reasonably necessary to secure the safety of passengers and property in transit. Wilson v. Hamilton, 4 Ohio St. 723; Holmes v. Oregon & C. R. Co. (D. C.) 5 F. 523; Meisle v. N. Y. Central & Hudson River R. R. Co., 219 N. Y. 317, 114 N. E. 347, Ann. Cas. 1918E, 1081; Lewis v. Smith, 107 Mass. 334; Sturgis v. Kountz, 165 Pa. 358, 30 A. 976, 27 L. R. A. 390; Amos v. Delaware River Ferry Co., 228 Pa. 362, 77 A. 12.

It is claimed on behalf of the respondents that a large and heavy barrier could not conveniently be used, because it would have to be removed when the Tennessee side was reached, to permit the car to drive off the ferry. That, however, cannot justify the use of an insufficient and worthless barrier. If timber of sufficient width and thickness to afford a substantial barrier could not be used for that purpose, respondents could have used a chain of such size and strength as to afford a substantial barrier, to prevent the truck, under conditions and circumstances reasonably to be anticipated, from falling into the river.

[3, 4] It is claimed on behalf of appellants that the truck was moving at such speed and under such high power that it would have broken down any barrier. That conclusion is not sustained by the evidence. Mere theory or conjecture as to what would have happened, if proper barriers had been provided, cannot excuse the owners and operators of a ferry from the exercise of due care to provide barriers of sufficient strength to afford reasonable protection to property and passengers. Ferrymen are chargeable with knowledge that animals and automobiles may not, at all times, be under adequate control. Sparkman v. Graham, 79 Miss. 376, 30 So. 713; Wilson v. Alexander, 115 Tenn. 125, 133, 88 S. W. 935; Meisle v. New York Central & Hudson River R. R. Co., 219 N. Y. 317, 114 N. E. 347, Ann. Cas. 1918E, 1081.

[5] Testimony was also offered on behalf of the respondents, tending to prove that Reed appeared to be inexperienced in the handling of his truck, and for that reason unable to control its operation. Neither of the witnesses that so testified had any knowledge whatever as to Reed's experience or lack of experience, and their opinion, based upon what they observed at the time of the accident, cannot be accepted as a preponderance of the evidence on that question of fact, in disregard of the testimony of witnesses, who had positive knowledge, that Reed had been driving this identical truck for four or five months prior to the accident. Nor does it appear that the accident occurred through lack of skill or negligence on the part of Reed, when considered in connection with the undisputed fact that the deck of the barge was so narrow that he had practically little or no space in which to maneuver his car into position, without grave danger of striking and breaking down the insufficient barrier on the river side.

[6] Upon a careful review of all the evidence in this record, this court has reached the conclusion that the judgment of the District Court is not only not against the decided preponderance of the evidence, but, on the contrary, is fully sustained thereby.

Judgment affirmed.