McINNIS, Judge ad hoc.
This suit, numbered 39157 on the docket of the Ninth Judicial District Court, is consolidated with case No. 39302, Dupree v. State of Louisiana, La.App., 59 So.2d 242. Both cases arose out of a tragic occurrence when an automobile driven by the wife of Edward Dupree broke through a chain barrier on the river end of the ferry over the Mississippi River at the Angola crossing, resulting in the death by drowning of Mrs. Dupree and Ira Bordelon, Jr., aged seven years, and Ronald D. Bordelon, aged five years, children of Ira Bordelon and wife.
The ferry consists of a steel barge some sixty feet long and sixteen feet wide, with a ten foot apron or ramp on each end of the barge, and is towed by a motor propelled tug. The aprons or ramps have steel cables on each side, running through the “eyes” of upright steel posts on the barge, so devised that when one ramp is lowered the one on the opposite end is raised correspondingly. The aprons or ramps are attached to the barge with hinges so as to be flexible and to give when the barge is pushed up to and upon the river bank. The ferry is one of two means of ingress and egress to and from the Louisiana State Penitentiary at Angola, and is operated by inmates and employees of the penitentiary without charge for its use, and it is alleged that the ferry service was on November 19, 1949, available to vehicles, employees and others entering and leaving the penitentiary grounds either for social visits to or business at the penitentiary.
*233 E'dward Dupree, plaintiff in suit No. 39302, was at the time, an employee of the penitentiary and lived there in a house provided for him, rent free.
Mrs. Bordelon is the daughter of Mrs. Dupree and step-daughter of Edward Du-pree. On the day of the unfortunate accident, Mrs. Dupree was driving a 1949 Chevrolet club coupe with Mrs. Bordelon and two of her children in the front seat and the two children who lost their lives were in the back seat. Mrs. Dupree was going to the home provided for her and her husband, and Mrs. Bordelon and children were going there for a visit.
On the side of the river opposite Angola, the bank is higher and steeper than on the Angola side. As Mrs. Dupree was driving down to the ferry she apparently lost control of the automobile, through failure of the brakes or for some other reason, and drove onto the ferry at a speed estimated by witnesses from five to twenty miles per hour, and was unable to stop at the end of the barge, and a plug in one of the steel posts, to which the chain was fastened, gave way to the impact and the automobile went onto the ramp and on into the river. Mrs. Bordelon, seeing that her mother could not stop, managed to get out with the two children that were on the front seat, but was unable to get the two on the back seat and her mother out, and they were drowned. The automobile was said to have floated momentarily, but could not be rescued in time to save the occupants.
It is alleged that a few weeks prior to November 19, 1949, a truck had broken the hook on the upright bar to which one end of the chain was secured, and that at the time of the accident the chain was tied with a small rope, and provided no protection, but this allegation as to the chain being tied with rope is not shown by the record to be true.
It is alleged that the anticipated visit to the penitentiary and the use of the ferryboat to cross the Mississippi River to the penitentiary grounds was with the permission and invitation of the penitentiary administrators and in accordance with the usual custom and procedure.
Specific acts of negligence charged to the defendant are quoted below:
“1. Failure to provide a safe means of approach to the ferryboat; in this connection petitioners show that the said Penitentiary superintendent, inmates and employees allowed and required vehicles going onto the ferryboat to go down a steep’ embankment which due to the recent rain was slippery and constituted a hazardous and unsafe means of approach to said ferryboat;
“2. Failure to provide proper ‘scotches’ or sufficient guard rail or barrier across the opening on the river side or end of the ferryboat; in this connection petitioners show that since the aforesaid Dupree automobile was the first vehicle going onto the ferryboat it was necessary that the driver thereof proceed to the end of the ferryboat or barge away from the embankment against which the opposite or entrance end of the ferryboat rested; that the end of the ferryboat, which was on the river side and which the Dupree automobile approached after getting on the ferryboat, was open and had no barrier except for a small chain stretched across the opening and this chain was secured to the ferryboat at one of its ends (the chain’s end) by a small rope so that the strength of the barrier at the said opening was equivalent to the strength of the said small rope; petitioners further show that the penitentiary inmates and employees operating and working on the ferryboat failed to use any kind of scotch or block to prevent the forward movement of the Dupree automobile or any other automobile to be transported on the ferryboat although the first automobile, such as the Dupree automobile, was required to move to the end or opening of the ferryboat on the river side of the latter;
“3. Failure to provide a practical and sufficient barrier across the riverward open end of the ferryboat;
“4. Failure to exercise reasonable supervision over the automobiles, including the ■aforesaid Dupree automobile, while on the ferryboat and while going onto same;
“5. Failure to provide or equip the ferryboat with such appliances as are reasonably necessary to secure the safety of passengers and property in transit;
*234 “6. Failing to have anyone on the deck of the ferryboat to direct the movement of the automobiles including the Dupree automobile in coming onto the ferryboat; and failing to have anyone on the deck of the ferryboat to place chock blocks or scotches in front of the vehicle’s wheels when it reached the opposite or riverward end or opening of the ferryboat;
“7. Failure of the Penitentiary inmates and employees to render assistance to the occupants of the Dupree automobile when it became evident that they were in distress; in this connection petitioners show that Mrs. Dupree screamed when her car came down the steep embankment (approach to the ferryboat) and her car struck the left side railing of the ferryboat and then proceeded to the opposite end or opening of the ferryboat the deck of which was slippery; that several penitentiary convicts and employees were on the embankment or approach to the ferryboat when the Dupree automobile went onto the ferryboat, but none made any effort to render the occupants of the said Dupree automobile any assistance;
“8. Failing to do anything or to use any material to counteract the slippery and muddy condition of the deck of the ferryboat which condition rendered driving of a vehicle, including the Dupree automobile, thereon extraordinarily hazardous;
"9. Failure of the operator of the tug secured to the ferryboat to render any assistance to the occupants of the Dupree automobile as it approached the riverward opening or end of the ferryboat, and failure of the said tug operator and other employees of the Penitentiary present at the scene, when the Dupree automobile went into the river to do anything to extricate the occupants therein, i.e., the said Mrs. Dupree, and Ira Bordelon, Jr. and Ronald D. Bordelon, after the Dupree automobile had gone into the river and while it floated for a few minutes on the surface of the river before submerging and resulting in the deaths of the three above named occupants;-
* * * * * *
“Petitioners now allege in the alternative, and only in the event, that it may be shown that the said Mrs. Dupree was negligent, that the aforesaid incident resulting in the deaths of petitioners’ two children and the proximate cause of said deaths was the concurrent negligence of the State of Louisiana, the said Penitentiary and its Superintendent, inmates and employees, with that of Mrs. Dupree, which concurrent negligence consisted of the acts of omission and commission of defendant’s employees and institution’s inmates as set forth here-inabove.”
Ira Bordelon asks for $711.50 expenses and $15,000 for the deaths of the children. Mrs. Bordelon asks for $15,000 for the deaths of the children.
Authority to sue the State is claimed by Dupree under Senate Bill No. 16, and by the Bordelons under Senate Bill No. 17, both of which bills were passed by the Senate and House, and both were vetoed by the Governor ón June 30, 1950.
Similar exceptions to jurisdiction ratione personae and ratione materiae were filed by the State, reading substantially as follows:
“Now into Court, through undersigned counsel comes the State of Louisiana, defendant in the above numbered and entitled cause, and excepts herein to the jurisdiction ratione personae and ratione ma-teriae of this Honorable Court on the ground that Senate Bill Number 17 of the Regular Session of 1950 is unconstitutional and of no legal effect, for the following reasons:
“(1) That the Governor of the State of Louisiana did veto said Senate Bill Number 17 and plaintiffs are without authority to bring said suit.
“(2) That Senate Bill Number 17 provides that any judgment rendered in favor of plaintiffs shall be paid by the Treasurer of the State of Louisiana out of any funds belonging to the State of Louisiana not otherwise appropriated; that said provision is contrary to Article 3, Section 35 of the Constitution of the State of Louisiana which provides that no judgment for money rendered against the State shall be satisfied except out of monies appropriated by the Legislature for the purpose.
*235 Wherefore, defendant prays that this exception be maintained, and after due proceedings had, that plaintiffs’ suit be dismissed at their cost.”
Exceptions of no cause and no right of action were also filed. The exceptions of no cause and no right of action were referred to the merits. The court minutes do not show that the pleas to the jurisdiction were ever tried. Apparently those exceptions were abandoned. They are not meritorious anyway. Lewis v. State, 207 La. 194, 20 So.2d 917; Jefferson Lake Sulphur Co., Inc. v. State, 213 La. 1, 34 So.2d 331.
The State then answered, denying the substantial allegations of the petition, and further answering, said:
“(■a) That said ferry was a private ferry operated for the use and benefit of the penitentiary; was for use of personnel of penitentiary and for transportation of trucks of penitentiary; that no one was permitted to cross said ferry without permission of the Superintendent of the penitentiary; that signs placed on the road leading to the ferry notified the public that said ferry was a private ferry and no admittance permitted without permission of the Superintendent.
“(b) That the embankment leading to the ferry was not excessively steep, was dry and in good condition, said approach having been covered with shale.
“(c) That the barrier on the ferry consisted of a heavy log binding chain secured to a metal post; that said barrier was in good condition and is the same type barrier used on other ferries operating in the State of Louisiana; that said barrier was attached to the metal post by means of a metal hook securely welded to said post. Defendant denies that said chain was attached to the post by a rope.
“(d) That blocks were placed on said ferry to be placed under the wheels of automobiles thereon to prevent movement of the automobiles; that the employees on the ferry used said blocks on all automobiles entering the ferry but could not possibly place them under the Dupree automobile as it entered the ferry at a speed of approximately 20 miles per hour and did not stop until it struck the chain and went off into the river.
“(e) That said ferryboat was equipped with all appliances necessary to secure the safety of those using said ferry; that employees on said ferry at all times exercised supervision over those entering the ferry but could render no assistance to the Du-pree automobile because of its great rate of speed and the reckless manner in which it was driven on said ferry.
“(f) That the deck of the ferry was dry and clean; that the sun was shining at the time of the accident and no rain had fallen for several days.
“(g) That the river was not in a high stage at time of the accident and the water was calm.
“(h) That the employees of the State did everything that careful, prudent persons would have done under the same circumstances, and were guilty of no acts of carelessness, recklessness or negligence which caused said accident or the resultant death of any individuals.
“(i) That the said accident and its consequences were due entirely to the gross and wanton carelessness, negligence and recklessness of Mrs. Dupree, who was negligent in the following particulars :
“1. In driving at a speed of approximately 20 miles per hour through said ferry, striking the barrier with great force and breaking said barrier, which speed, under the circumstances, was grossly reckless, careless and negligent.
“2. In driving an automobile with four people seated on the front seat.
“3. In driving an automobile with defective brakes, said brakes having been defective and in need of repairs for several days prior to said accident.
“4. In failing to slacken her speed or apply her brakes when approaching said ferry.
“5. In driving said automobile while under the influence of intoxicating liquor or gin, that several bottles of such liquor were found in said automobile when it was recovered after being submerged.
*236 “(j) In the alternative, and only in the alternative, if on the trial of this cause it should be determined that defendant was guilty of any negligence, and in that event only, defendant specially pleads that the plaintiff, Mrs. Ruby Bordelon, was guilty of contributory negligence by permitting herself and children to be driven in said automobile with four occupants on the front seat, or with more than a safe load thereon, by riding in an automobile with knowledge that the brakes were defective, by riding in a car operated by a driver under the influence of intoxicating liquor and by not objecting to the manner in which said automobile was being operated, and that the negligence of the driver is imputed to the plaintiff, which imputed negligence in addition to the negligence of the plaintiff herself constitute contributory negligence which was the direct and proximate cause of the accident, without which there would have been no accident and plaintiff would have received no injuries.”
The two suits were consolidated for trial and after trial had, the lower court rendered oral opinions awarding Ira Bordelon $5,711.50 and his wife $5000. They answered the appeal, brought to this court by 'the defendant, asking that the judgment in their favor be increased by $2,500 to each.
The first question to be answered is whether or not the agents, employees and inmates of the penitentiary were guilty of any negligence. If this question is answered in the negative, the matter ends there.
At the beginning of the trial, the following facts were admitted:
“It is admitted that said ferry was under the exclusive management, control and supervision of the State Penitentiary and is one of the two means of ingress and egress to and from the Penitentiary grounds. It is further admitted that said ferry consists of a steel barge, approximately sixty (60) feet long, and sixteen (16) feet wide, with a ten (10) foot ramp on each end of the barge, and is towed by a motor propelled tug.
“It is admitted that on November 19, 1949 at about two p. m., the 1949 Chevrolet Club Coupe automobile, driven by Mrs. Cecilia Briggs Dupree, went on to the State Penitentiary ferry and at that time, in addition to Mrs. Dupree who was driving, the front seat was occupied by the Plaintiff Ruby Bordelon, Ira Bordelon, Jr., and two other small children; that Ronald D. Bor-delon occupied the rear seat of the automobile, that the said automobile went off of the ferry into the Mississippi river with Mrs. Dupree, Ira Bordelon, Jr., and Ronald D. Bordelon therein, and the last three named persons were drowned.
“It is admitted on November 19, 1949, the Mississippi River was not at what is usually referred to as ‘flood stage.’
“It is admitted that Ira Bordelon and Ruby Sanders Bordelon, plaintiffs in Suit # 31,157, were lawfully married and that Ira Bordelon, Jr., and Ronald D. Bordelon were born of said marriage; that Ira Bor-delon, Jr., and Ronald D. Bordelon died on November 19, 1949 when the automobile in which they were passengers went into the Mississippi River, and that at the time of their death they were living and residing with their aforesaid parents; that Edward Dupree and Cecilia Briggs Dupree were lawfully married; that Mrs. Cecilia Briggs Dupree died as a result of drowning on November 19, 1949.
“It is admitted that on November 19, 1949 there had been no rain at or in the vicinity of either landing of the Louisiana State Penitentiary ferry landing.”
Counsel for the State made the following objection to the admissibility of any evidence: “If Your Honor please, the defendants in these suits make an obj ection to all testimony on behalf of plaintiffs’ allegations and wish to make said objection general so as to cover all testimony offered, the objection being made on the ground that the allegations of plaintiffs’ petition show that the occupants of said automobile were licensees on said ferry and the only duty owed by the State of Louisiana was not to willfully injure them. The petition alleges no wilful injuries and therefore said testimony is irrelevant and immaterial. We make further objections on the grounds that the allegations of plaintiffs’ petitions do not allege that said ferry is a public *237 ferry in the respect that a toll is charged, which is a necessary incident of a public ferry; that the jurisprudence provides that where a ferryman carries property or passengers gratuitously he is liable only for gross negligence; that plaintiffs do not allege gross negligence and therefore said testimony in furtherance of plaintiffs’ allegations are irrelevant and immaterial.”
This objection was overruled by the court, and made general to all testimony covered by the objection.
The oral testimony consists of 276 pages. There is little dispute as to the manner in which the accident happened. It happened about as alleged in the petition.
The charge that the approach to the ferry was by way of a steep incline is correct, but the charge that it was slippery, hazardous and unsafe due to recent rains is not made out. On the contrary, it is admitted that there had been no recent rains.
The charge of failure to provide proper “scotches” or sufficient rail or barrier across the opening on the river end of the ferry is not made out, unless it be held that the chain across the end of the ferry was not adequate. There were "scotches”— blocks of timber- — -to be placed in front of cars after they came to rest on the ferry, but they could not be placed until a car had come to rest. As said above, the charge that one end of the chain was fastened by a rope is not made out. On the contrary, it appears that the end of the chain referred to had been welded to the iron post to which it was attached, and that the impact of the car against the chain actually pulled a part of the iron post out. However, it was not intended to withstand such impacts, which could hardly be anticipated.
The record shows that no supervision could have been exercised over the Dupree car, because it was out of control before it reached the ferry, and the attendants had no means of controlling its movement. The charge that the appliances on the ferry were not such as are reasonably necessary to secure the safety of passengers and property in transit is not made out. They were the same as ordinarily used, and had been in use for some time.
Failure to have anyone on the barge to direct the movement of cars, including the Dupree car, and to place “scotches” in front of vehicles contributed nothing to the happening of the unfortunate occurrence. The car went onto the barge out of control of the driver, and directions to the driver would have availed nothing.
It is not shown that the inmates and employees could have done anything to prevent the car going into the river, unless they were super men. The car got out of control as it came down the embankment, and Mrs. Dupree screamed, but it must have been only seconds before it was in the river. There was no time for the inmates and employees to do anything to stop the car or to rescue it after it was in the river.
The record does not disclose that the deck of the barge was slippery or muddy. Mr. Dupree says he saw the barge that morning and, -asked about mud on it, said, "I hadn’t paid much attention. It was some sand and some mud on it, but not much if it was.”
It is not shown that the operator of the tug secured to the ferryboat could have done anything to prevent the car going into the river, or that he could have rescued the people in the car. He had not enough time. The car floated only momentarily.
The charge that the operator of the tug towing the ferry had been drinking is not made out.
It is charged that because a truck with defective brakes, belonging to the penitentiary, had gone into the river in a similar manner a few weeks before the Dupree car went into the river, the penitentiary officials were guilty of negligence for not taking precautions to prevent a recurrence of such an accident, but we do not believe that it would be anticipated that persons would undertake to use the ferry with cars with defective brakes. There was not anything the operators of the ferry could do for such persons.
It is contended, and some evidence was offered, that the brakes on the Dupree car were not defective. If the brakes were not *238 defective, Mrs. Dupree must not have applied them, and the failure to stop the car evidently resulted from her negligence. There can be no doubt that either the brakes on the car were defective or that she failed to apply them. In either event, her negligence was the cause of the accident, unless it be found that the chain barrier across the end of the barge was not of sufficient strength. Of course, the happening of the accident itself is sufficient proof that it would not withstand the weight of a car driven against it at any considerable speed.
From all that is said above, we are of the opinion that the record supports the conclusion that there was no negligence on the part of the State of Louisiana, the Louisiana Penitentiary and its employees and inmates that contributed to the happening of the unfortunate accident. On the contrary, either faulty brakes on the car Mrs. Dupree was driving, or her failure to apply the brakes, was the proximate cause of the accident.
Having reached this conclusion, it is unnecessary to discuss the question of whether or not these people were invitees or licensees or any of the other questions raised in the pleadings and the briefs.
For all of these reasons, the judgment appealed from is reversed and the plaintiffs’ suit dismissed, at their costs.
KENNON, ]., not participating.