777

William **HENDERSON**, Appellant,

v.

Eric **TAYLOR** and Ross Taylor,
Respondents.

No. 46282.

Supreme Court of Missouri,
Division No. 2.

July 14, 1958.

Motion for Rehearing or to Transfer to
Court en Banc Denied Sept. 8, 1958.

Von Mayes, Caruthersville, Howard Mayes, Paragould, Ark., Bradley & Noble, John H. Bradley, Kennett, for appellant.

Blanton & Blanton, Sikeston, for respondents.

STOCKARD, Commissioner.

In this jury-tried action in which plaintiff sought $25,000 for personal injuries and the loss of his automobile, the jury, unable to agree, was discharged and a mistrial declared; but upon defendants' timely after-trial motion filed pursuant to Section 510.290 RSMo 1949, V.A.M.S., the trial court entered judgment for defendants in accordance with their motion for directed verdict at the close of all the evidence. The issue on this appeal is whether plaintiff made a submissible case.

Defendants operate a ferry across the Mississippi River with its western terminus at Caruthersville, Missouri. The approach to the Caruthersville ferry landing was downgrade and approximately 255 feet in length. It was of concrete construction about 14 feet in width with "five or six feet on each side after you leave the concrete." The ferryboat involved in the incident giving rise to this suit was 75 feet in length with a 10 foot "apron" at each end making an overall length of 95 feet.

On Sunday afternoon November 15, 1953, plaintiff drove his 1949 Frazier 4-door sedan to a level area near the top of the downward grade leading to the ferry landing and stopped. On the previous day he had had the brakes on his automobile serviced and adjusted and they were in good working order. When the ferry was ready to receive eastbound traffic, an employee of defendants, who was standing on the ferry, signaled to plaintiff and he then started his automobile forward and down the approach in "low" gear. When "about half way down the grade," as plaintiff once stated, or "something like" 75 feet from the top of the grade, as he subsequently stated, he attempted to apply the foot brakes on his automobile and discovered that they had completely failed. He "pumped" the brakes but they did not "catch" or work, and as the automobile rolled down the approach and onto the ferry he turned off the ignition because he thought that "if you would cut the ignition off and kill the motor, it would kill the speed of the car." However, plaintiff's automobile was equipped with "overdrive" and it "automatically goes out of gear when you cut the motor off." After plaintiff's automobile reached the floor of the ferry, he called to defendant's employee, "I haven't got any brakes," and he opened the door, and "just fell out of the car" onto the ferry. It was from this action of intentionally falling or jumping from his automobile that he received the personal injuries for which he seeks compensation from the defendants. The automobile continued across the ferry, broke a chain suspended across the river end of the ferry, went up over the apron, which was raised about three feet, and plunged into the water.

Plaintiff testified that he was moving "10 or 15 miles an hour" when he started down the approach to the ferry, that he was going 15 miles an hour when he reached the apron of the ferry, and that he was going 10 miles an hour after he reached the floor of the ferry. Defendants' witnesses estimated the speed of the automobile to be substantially greater. After plaintiff discovered that he had no foot brakes on his automobile he did not turn his automobile to the right or left because "the speed of the car and the seconds you had you couldn't have cut either way without going into the river." When asked if he applied his emergency brake, plaintiff replied, "I believe I did. I am not sure." However, when the automobile was pulled

from the river the following day the emergency brake was not on.

Plaintiff was familiar with both the ferry and the approach, and he had helped construct the approach about 12 years earlier. He was also familiar with the chain suspended across the river end of the ferry, and he testified that it was "an ordinary log chain, I reckon" and that the links were "I imagine about a quarter-inch." According to plaintiff, the chain was tied on one side of the ferry and "hooked on the other so they could unhook it and let it down."

In his petition plaintiff alleged the facts showing the circumstances of the incident resulting in his personal injuries and the loss of his automobile, and then alleged "that defendants negligently failed to equip the forward end of said ferryboat with a safety barrier reasonably sufficient in strength to withstand the said impact of his automobile under such conditions and said negligence was the proximate cause of said loss and injuries." In his brief plaintiff contends that the fact that the downgrade approach was "rather steep" also contributed to his injuries and losses, and the fact that this was not pleaded as a contributing cause does not preclude a consideration of it on this appeal because there was no objection to the evidence pertaining to it. We shall take into consideration that the evidence shows that the approach was "a seven to one grade."

We note that all of the personal injuries suffered by plaintiff were incurred when he voluntarily fell or jumped from his automobile before it reached the chain barrier. Therefore, even though the defendants had maintained "a safety barrier reasonably sufficient in strength to withstand the said impact of [plaintiff's] automobile under such conditions," plaintiff would have sustained the precise injuries he did. However, the parties make no issue of this on this appeal, and, admittedly, plaintiff's automobile would not have gone into the water if the barrier had been sufficient to stop it.

As a general rule a public ferryman is a common carrier of passengers. Shepard v. Reed, 6 Cir., 26 F.2d 19; 36 C.J.S. Ferries § 28 b. But he is not an insurer of their safety. Hendricks v. Pyramid Motor Freight Corporation, 328 Pa. 570, 195 A. 907; Gates v. Bisso Ferry Co., La.App., 172 So. 829; Chesapeake Ferry Co. v. Cummings, 158 Va. 33, 164 S.E. 281, 282, 82 A.L.R. 790; 36 C.J.S. Ferries § 28; Annotation 82 A.L.R. 798. Assuming, but not deciding, that when plaintiff presented himself at the top of the downgrade approach to defendants' ferry and was signaled by defendants' employee to drive onto the ferry he then obtained the status of a passenger (see 22 Am.Jur., Ferries, § 41), defendants were bound to exercise "the highest degree of care that prudence and foresight would demonstrate the necessity of" for plaintiff's safe transportation. Chesapeake Ferry Co. v. Cummings, supra. It has been held that in the exercise of this care the operator of a public ferry is charged with knowledge that automobiles may not at all times be under "adequate" control. Shepard v. Reed, supra; Chesapeake Ferry Co. v. Cummings, supra; Meisle v. New York Central & H. R. R. Co., 219 N.Y. 317, 114 N.E. 347, Ann.Cas.1918E, 1081; Byrd v. Napoleon Avenue Ferry Company, Inc., D.C., 125 F.Supp. 573. It has also been held that for this reason he must equip the ferry with "proper safeguards" to prevent injury which might result therefrom, Chesapeake Ferry Co. v. Cummings, supra, and must provide a "practical barrier" to protect automobiles from going off the ferry into the water. Meisle v. New York Central & H. R. R. Co., supra; Chesapeake Ferry Co. v. Cummings, supra; Bean v. Hinson, Tex.Civ.App., 235 S.W. 327; Shepard v. Reed, supra; Annotation 82 A.L.R. 798. "However, the ferryman need not equip his boat so as to prevent abnormal casualties of a character not reasonably to be anticipated." 36 C.J.S. Ferries § 28 e; Meisle v. New York Central & H. R. R. Co., supra; Bordelon v. State, La.App., 59 So.2d 231; Annotation 82 A.L.R. 798. The

criterion for ascertaining whether a ferry-man has fulfilled his duty with respect to the barriers provided and in use on his ferry is whether they "were such as a reasonably prudent person would have used in the same or similar circumstances." Chesapeake Ferry Co. v. Cummings, supra [1580 A. 33, 164 S.E. 282].

■ In this case the evidence of plaintiff established that before or immediately after he started his automobile down the approach to the ferry the foot brakes "went out" or failed completely, and that plaintiff made no effort to use his emergency brake, or if he did attempt to use it, it too was completely ineffective. Under the circumstances, plaintiff, and not defendants, was responsible for the condition of his car. Byrd v. Napoleon Avenue Ferry Company, D.C., 125 F.Supp. 573. There is no duty on a ferryman to inspect each automobile before it is driven aboard to ascertain whether its brakes and other machinery are in good working order, Hendricks v. Pyramid Motor Freight Corp., supra, and defendants had no knowledge of the defective condition of the brakes on plaintiff's automobile.

■ Plaintiff's evidence also established that the defendants did provide on the river end of their ferry a barrier consisting of "an ordinary log chain" with quarter-inch links. There is no contention by plaintiff, and no evidence from which it could be inferred, that the chain was worn, or inadequately anchored to the boat, or negligently maintained. Neither is there any contention, nor is there evidence from which it may be inferred, that the chain was not an adequate and practical barrier to prevent automobiles from going off the end of the ferry because of the movement of the ferry in its operation, or because of rough water, or because of normal and usual movement of automobiles on the ferry. The only contention is that the chain was not adequate to stop plaintiff's car when it rolled down the approach and across the ferry with no brakes whatever, or with no foot brakes

and with no attempt by plaintiff to use the emergency brake. Therefore, the question here presented is whether an ordinary reasonably prudent person operating as a public ferryman under the circumstances shown by the evidence, in the exercise of the required degree of care, would anticipate that automobiles would be driven onto the downgrade approach to the ferry and then on the ferry when they had no brakes whatever, or when no attempt would be made to use existing brakes, and therefore would for that reason construct and maintain a barrier across his ferry, consisting of a larger or heavier chain, or of some other material, of sufficient size, structure and strength to prevent such automobiles from going off the ferry and into the water.

The approach to the ferry at water level of the river necessarily had to be "downgrade" and there is no showing whatever that there was any failure to maintain the approach properly or that, other than the fact that it was "downgrade," it contributed in any way to the accident. Plaintiff now contends that the approach was "rather steep," but the only evidence is that it was a "seven to one grade." It is not contended that it was too steep for the normal operation of automobiles or for the safe operation of automobiles with adequate foot brakes or a set of adequate emergency brakes.

In Bordelon v. State, supra [59 So.2d 239], a case which is almost identical to this one on its essential facts, it was expressly held that the duty of a ferryman was "to provide such barriers as were necessary for the safe transportation of passengers and property, but not to furnish appliances of a character to safeguard against casualties not reasonably to be anticipated," and that "it would not be anticipated that persons would undertake to use the ferry with defective brakes." It was also expressly held that it was not negligence on the part of a ferry operator to maintain a chain across the river end of a ferry which was insufficient to stop an automobile which the driver thereof had "lost control * * * through

failure of the brakes or for some other reason," after it started down the approach to the ferry landing, and which automobile was driven "onto the ferry at a speed estimated by witnesses from five to twenty miles per hour, and was unable to stop at the end of the barge [ferry], and a plug in one of the steel posts, to which the chain was fastened, gave way to the impact and the automobile went onto the ramp [apron] and on into the river."

In this case defendants provided and maintained the approach to their ferry, and they furnished a barrier in the form of "an ordinary log chain" across the river end of their ferry. There is no showing that the approach or the chain was negligently maintained, unless it could be said that it was negligence to maintain a barrier chain insufficient in strength to stop an automobile of the size and weight of plaintiffs after it had gone down the "rather steep" approach with no brakes whatever or without existing brakes being used. This could be found to constitute negligence on the part of defendants only if they, acting according to the standard above set forth, should anticipate that automobiles would be driven down the approach and onto the ferry when they had no brakes whatever, or when there would be no effort made by the operator to use existing brakes. Bearing on this question is the statutory requirement that "All motor vehicles * * * shall be provided at all times with two sets of adequate brakes, kept in good working order, * * *." Section 304.560(3) RSMo 1949, V.A.M.S. We conclude that defendants could not reasonably be required to anticipate such an unusual and abnormal situation. See Bordelon v. State, supra. Therefore, in the exercise of the high degree of care imposed upon them as public ferrymen, it could not reasonably be found that defendants were negligent in failing to equip their ferry with appliances designed to prevent plaintiff's automobile from going off the end of the ferry under the facts and circumstances presented by plaintiff's evidence. The proximate cause of plaintiff's personal injuries and damages was either the failure of both sets of the brakes on his automobile, or the failure of the foot brakes to work and the act of plaintiff in not using or attempting to use the emergency brakes, circumstances for which defendants were not responsible.

Plaintiff's evidence does not present a set of facts from which a jury could reasonably find the existence of any negligence on the part of defendants which was the proximate cause in whole or part of the personal injuries to plaintiff or the damage to his automobile. Therefore, the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.